### RIEGLER v HOLIDAY SKATING RINK, INC

Docket No. 55224. Argued March 4, 1975 (Calendar No. 2).—Decided April 7, 1975.

John Riegler was denied admission to the Holiday Skating Rink because his hair was too long. He commenced an action in the Muskegon Circuit Court for an injunction to prevent Holiday Skating Rink, Inc., from excluding males from its premises solely because of the length of their hair. The trial court, James F. Schoener, J., found that § 146 of the Penal Code, MCLA 750.146; MSA 28.343, as it then stood, proscribed only discrimination in public accommodations based on race, creed, or color, and that plaintiff's complaint was not within the statute. The Court of Appeals, Danhof, P. J., and McGregor and Miles, JJ., affirmed (Docket No. 14207). Plaintiff appeals. *Held:*

1. That statute proscribed only discrimination in public accommodations based on race, creed, or color, and plaintiff's complaint was not within the statute.

2. The three sections of the equal accommodations act, §§ 146–148 of the Penal Code, should be read together, and when so read § 146 is qualified by the limiting language of §§ 147 and 148 restricting the scope of the prohibition to denials of equal accommodations based on race, creed, or color.

3. The nature of the rights secured by § 146 cannot be defined without reference to §§ 147 and 148.

48 Mich App 449; 210 NW2d 454 (1973) affirmed.

1. CIVIL RIGHTS—ROLLER-SKATING RINK—EQUAL ACCOMMODATIONS— HAIR—INJUNCTION.

A complaint for injunctive relief by a plaintiff who was denied admission to defendant's roller-skating rink because of the length of his hair and claimed that defendant's restriction denied him equal accommodations was properly denied where the language of the equal accommodations statute as it then stood clearly indicates that the Legislature intended to pro-

REFERENCES FOR POINTS IN HEADNOTES
[1] 15 Am Jur 2d, Civil Rights § 19.
[2, 3] 15 Am Jur 2d, Civil Rights § 18 *et seq.*

scribe discrimination based on race, creed, or color, and plaintiff did not allege any such discrimination (MCLA 750.146 *et seq.*).

2. CIVIL RIGHTS—EQUAL ACCOMMODATIONS—STATUTES.

The three sections of the equal accommodations act should be read together so that the scope of prohibition is restricted to denials of equal accommodations based on race, creed, or color (MCLA 750.146–750.148).

3. CIVIL RIGHTS—EQUAL ACCOMMODATIONS—STATUTES.

The nature of the rights secured by the first section of the equal accommodations act cannot be defined without reference to the two following sections (MCLA 750.146–750.148).

*McCroskey, Libner, VanLeuven, Kortering, Cochrane & Brock* (by *Timothy J. Bott),* for plaintiff.

Amicus Curiae: *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael A. Lockman,* for the Department of Civil Rights.

LEVIN, J. The question is whether § 146 of the Penal Code,[1] before its 1972 amendment, prohibited discrimination in public accommodations based on hair length.

John Riegler was denied admission to the Holiday Skating Rink because his hair, alleged to be "slightly shorter than shoulder length", was too long.

Riegler filed a complaint in the circuit court requesting that Holiday Skating Rink be enjoined from excluding males from its premises solely because of the length of their hair. He contends that Holiday's "dress code" violates § 146, which he characterizes as "The Michigan Equal Accommodations Act".

The trial court found that § 146 proscribed only

---

[1] MCLA 750.146; MSA 28.343.

discrimination in public accommodations based on race, creed or color, and that Riegler's complaint was not within the statute.

The Court of Appeals reached the same conclusion and so do we.

The parties in their pleadings, the trial court and the Court of Appeals have limited this case to the construction of the statute; no constitutional issue is presented.

Holiday Skating Rink did not file a brief in the Court of Appeals and has not filed one in this Court. Holiday wrote a letter to this Court explaining that it is a small business and cannot afford to hire a lawyer to protect its interests.[2]

I

Resolution of the question presented requires a determination whether the "race, creed, color" limitation which appeared in § 147 and § 148 of the Penal Code should be read into § 146.[3]

---

[2] We invited the Civil Rights Commission to file a brief amicus curiae addressing questions we posed.

[3] MCLA 750.146–750.148; MSA 28.343–28.345. The following is the text of the three sections before the 1972 amendments:

"Sec. 146. All persons within the jurisdiction of this state shall be entitled to full and equal accommodations, advantages, facilities and privileges of inns, hotels, motels, government housing, restaurants, eating houses, barber shops, billiard parlors, stores, public conveyances on land and water, theatres, motion picture houses, public educational institutions, in elevators, on escalators, in all methods of air transportation and all other places of public accommodation, amusement, and recreation, subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike, with uniform prices.

"Sec. 147. Any person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communications, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such places shall be refused, withheld from or denied

Riegler contends that the intent of § 146 is to provide equal accommodations for "all persons" and to proscribe any and all types of discrimination against any and all persons. He finds support for this argument in the express language of § 146 ("[a]ll persons * * * shall be entitled to full and equal accommodations * * * subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike, with uniform prices.") and the absence in that section of the qualifying words "race, creed or color". He argues that the explicit use of "race, creed, color" in §§ 147 and 148 shows that when the Legislature intends to limit the scope of the prohibition to discrimination based on "race, creed, color", it says so.

He acknowledges that the Legislature had a special concern for eliminating discrimination

to any person on account of race, creed or color or that any particular race, creed or color is not welcome, objectionable or not acceptable, not desired or solicited, shall for every such offense be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $100.00 or imprisoned for not less than 15 days or both such fine and imprisonment in the discretion of the court; and every person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place, and who violates any of the provisions of this section, shall be liable to the injured party, in treble damages sustained, to be recovered in a civil action: Provided, however, That any right of action under this section shall be unassignable. In the event that any person violating this section is operating by virtue of a license issued by the state, or any municipal authority, the court, in addition to the penalty prescribed above, may suspend or revoke such license.

"Sec. 148. Race or color not to disqualify for jury service. No citizen of the state of Michigan, possessing all other qualifications which are or may be prescribed by law, shall be disqualified to serve as grand or petit juror in any court of said state on account of race, creed or color, and any officer or other person charged with any duty in the drawing, summoning, and selection of persons who shall exclude from, fail, neglect and/or refuse, by words, trick and/or artifice, to draw the name of, summon and/or select any citizen for jury service because of his or her race, creed and/or color, shall be guilty of a misdemeanor and upon conviction shall be fined not less than 50 dollars or shall be imprisoned for a period of not less than 30 days, or both such fine and imprisonment in the discretion of the court."

based on "race, creed, color", but argues that concern is evidenced by the provision of criminal sanctions in §§ 147 and 148. Nothing in §§ 147 or 148 indicates an intention to limit § 146 to discrimination based on race, creed, color. Section 146 establishes "a statutory civil right" guaranteeing "all persons" access to public accommodations free of any discrimination whatsoever.

## II

We agree with the trial and appeals courts that the three sections should be read together and that so read § 146 was qualified by the limiting language of §§ 147 and 148 restricting the scope of the prohibition to denials of equal accommodations based on race, creed or color.

The three sections were first enacted in 1885 and were directed at discrimination based on "race or color":[4]

"SECTION 1. *The People of the State of Michigan enact,* That all persons within the jurisdiction of said State shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of inns, restaurants, eating-houses, barber shops, public conveyances on land and water, theatres, and all other places of public accommodation and amusement, subject only to the conditions and limitation established by law and applicable alike to all citizens.

"SEC. 2. That any person who shall violate any of the provisions of the foregoing section, by denying to any

---

[4] "The Michigan statute is one of the familiar type enacted by many states before and after this Court's invalidation of Congress' similar legislation in the *Civil Rights Cases,* 109 US 3 [3 S Ct 18; 27 L Ed 835 (1883)].[10]

"[10] These cases were decided in 1883. The Michigan statute was enacted originally in 1885. Seventeen other states have similar, and in many instances substantially identical, legislation." *Bob-Lo Excursion Co v Michigan,* 333 US 28, 33; 68 S Ct 358; 92 L Ed 455 (1948).

citizen, except for reasons applicable alike to all citizens of every race and color, and regardless of color or race, the full accommodations, advantages, facilities, or privileges in said section enumerated or by aiding or inciting such denial, shall for every such offense be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not to exceed one hundred dollars, or shall be imprisoned not more than thirty days, or both.

"SEC. 3. That no citizen of the State of Michigan, possessing all other qualifications which are or may be prescribed by law, shall be disqualified to serve as grand or petit juror in any court of said State on account of race or color, and any officer or other person charged with any duty in the selection or summoning of jurors, who shall exclude or fail to summon any citizen for the cause aforesaid, shall, on conviction thereof, be deemed guilty of a misdemeanor, and be fined not more than one hundred dollars, or imprisoned not more than thirty days, or both." 1885 PA 130.

This Court has previously indicated its understanding of the legislative purpose:

"The act in question is usually called the 'civil rights act.' *Its purpose is apparent.* While it applies to 'all persons in the jurisdiction of this State,' it cannot be doubted that *it was enacted with special reference to those of African descent."* (Emphasis supplied.) *Bolden v Grand Rapids Operating Corp,* 239 Mich 318, 321; 214 NW2d 241; 53 ALR 183 (1927).

"This statute exemplifies the changed feeling of our people towards the African race, and places the colored man upon a perfect equality with all others, before the law in this State." *Ferguson v Gies,* 82 Mich 358, 364; 46 NW 718 (1890).

By subsequent amendment the protection of the act was expanded to cover discrimination based on "creed".[5] This Court said, *"[t]he intent and purpose*

---

[5] 1919 PA 375.

*of the legislature in its enactment cannot be doubted.* * * * when the public are invited to attend places of public accommodation, amusement and recreation, there shall be no discrimination among those permitted to enter because of *race, creed or color".* (Emphasis supplied.) *Bolden v Grand Rapids Operating Corp, supra,* p 323.

The foregoing expressions by the *Bolden* Court in 1927 were after the act took its present form in 1919 (see fn 5).

After Riegler filed his complaint, §§ 146 and 147 were amended. Section 147 was broadened to proscribe discrimination based on "national origin", "sex", or "blindness", as well as discrimination based on "race", "creed" (now "religion"), or "color". 1972 PA 116. The following sentence was added at the end of § 146:

"Rooming facilities at educational, religious, charitable or nonprofit institutions or organizations, and restrooms and locker room facilities in places of public accommodation may be separated according to sex."

If we were to accept Riegler's construction of the statute, that each section should be read without reference to the limitations expressed in the other sections, then it might be argued that the Legislature intended that criminal penalties be imposed for separating according to sex "rooming facilities at educational, religious, charitable or nonprofit institutions and organizations, and restrooms and locker room facilities in places of public accommodation", as that limitation is not contained in § 147, only in § 146. We would not ascribe to the Legislature such an intent.

We conclude, based on the history of this legislation, the language of the statute, and earlier expressions of this Court, that the nature of the

right secured by § 146 cannot be defined without reference to §§ 147 and 148.

The question whether a similarly situated male would have a valid action for sex discrimination under the amended statute is not before us. We, therefore, do not consider this complaint in those terms.

The circuit court and the Court of Appeals are affirmed.

T. G. KAVANAGH, C. J., and T. M. KAVANAGH, SWAINSON, WILLIAMS, M. S. COLEMAN, and J. W. FITZGERALD, JJ. concurred with LEVIN, J.