MAGID v OAK PARK RACQUET CLUB ASSOCIATES, LTD.

Docket No. 77-2556. Submitted March 9, 1978, at Detroit.—Decided July 6, 1978. Leave to appeal applied for.

Martin K. Magid and Barry Soble, individually and on behalf of all males similarly situated, filed a complaint against Oak Park Racquet Club Associates, Ltd., and other tennis clubs in the Oakland County area and against the Michigan Indoor Tennis Association. The plaintiffs contended that by charging women a lower annual membership fee than they charge men, defendants are violating a Michigan statute guaranteeing the full and equal accommodations, advantages, facilities and privileges of places of public recreation to all persons, at uniform prices. In response to the four-count complaint, defendants filed an "Omnibus Motion to Dismiss", alleging that plaintiffs had failed to state a cause of action under any of the four counts and further contended that a class action was inappropriate. Summary judgment for defendants was entered on all four counts, with a ruling that plaintiffs could not maintain the action as a class action, Oakland Circuit Court, William J. Beer, J. Plaintiffs appeal. Held:

1. Summary judgment was appropriate on count I, which was under § 146 of the equal accommodations act, because the plaintiffs did not allege a withholding, refusal or denial of accommodations as is necessary to maintain a civil action for damages under § 146.

2. Summary judgment on count II, in which the plaintiffs alleged that defendants had circulated communications to the effect that plaintiffs would be refused, unwelcome and/or not desired or solicited, was inappropriate because the equal accommodations act expressly authorizes such a claim.

3. Count III which alleged that the defendants were unjustly enriched by the illegal contracts was properly dismissed because the contracts were not illegal.

4. The trial court did not err in holding that count IV failed to state a cause of action. That count contained an allegation of

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 15 Am Jur 2d, Civil Rights § 51.
[4] 15 Am Jur 2d, Civil Rights § 261.
[5, 6] 59 Am Jur 2d, Parties § 47 et seq.

conspiracy, which is not actionable without an allegation of a civil wrong resulting in damage caused by the defendants.

5. The trial court's ruling that the plaintiffs could not maintain the action as a class action was based on "findings" by the trial court which were not supported by facts of record. The only finding in which there appears to be merit is that concerning the defendant class. This issue should be addressed on remand.

Affirmed as to counts I, III and IV and reversed as to count II and remanded for further proceedings.

1. CIVIL RIGHTS—EQUAL ACCOMMODATIONS ACT—CAUSE OF ACTION—STATUTES.

A plaintiff, in order to maintain a civil cause of action under the equal accommodations act, must at least allege a withholding, refusal or denial of public accommodations or illegal advertising (MCL 750.146 *et seq.;* MSA 28.343 *et seq.).*

2. CIVIL RIGHTS—EQUAL ACCOMMODATIONS ACT—STATUTES—PENAL STATUTES—STRICT CONSTRUCTION.

The equal accommodations act is a penal statute and therefore must be strictly construed (MCL 750.146 *et seq.;* MSA 28.343 *et seq.).*

3. CIVIL RIGHTS—EQUAL ACCOMMODATIONS ACT—SUMMARY JUDGMENT—STATUTES.

Summary judgment in favor of a defendant, based on plaintiffs' failure to state a claim, on a count alleging that the defendants had circulated communications to the effect that plaintiffs would be "refused, unwelcome and/or not desired or solicited", was improper in an action under the equal accommodations act because such a cause of action is expressly authorized by statute (MCL 750.147; MSA 28.344).

4. CONSPIRACY—ALLEGATIONS—ACTIONABILITY.

An allegation of conspiracy, standing alone, is not actionable; a civil wrong resulting in damage caused by the defendants must be alleged.

5. ACTION—CLASS ACTION—REQUIREMENTS—COURT RULES.

There are five requirements for maintaining a class action: (1) numerous persons, (2) adequate representation, (3) common questions of fact or law affecting the rights of the several members, (4) common relief requested by the class, and (5) a class action is superior and/or manageable (GCR 1963, 208).

6. ACTION—CLASS ACTION—DEFENDANTS—INDIVIDUAL ACTION.

Plaintiffs may not sue in a class action a defendant whom they could not individually sue.

*Gary A. Colbert* and *Barry A. Seifman,* for plaintiffs.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John C. O'Meara* and *Robert P. Ufer),* for defendants.

Before: R. B. Burns, P. J., and Bronson and D. F. Walsh, JJ.

Bronson, J. On August 22, 1975, plaintiffs filed a complaint against defendants, tennis clubs in the Oakland County area and the Michigan Indoor Tennis Association. It is plaintiffs' contention that by charging women a lower annual membership fee than they charge men, defendants are violating a Michigan statute guaranteeing the full and equal accommodations, advantages, facilities and privileges of places of public recreation to all persons, at uniform prices. Plaintiffs brought the suit on behalf of themselves and all male persons who have paid defendants' membership fees which exceeded those paid by females. The four counts were based on: 1) MCL 750.146; MSA 28.343; 2) MCL 750.147; MSA 28.344, based on communications circulated by defendant; 3) unjust enrichment of defendants by virtue of accepting money under contracts illegal under the statutes; and 4) defendants' conspiracy to establish discriminatory membership fees so as to restrain trade.

In response, defendants filed an "Omnibus Motion to Dismiss", alleging that plaintiffs had failed to state a cause of action under any of the four counts and also contending that a class action was inappropriate.

The trial court granted summary judgment on all four counts for defendants and also ruled that plaintiffs could not maintain the action as a class

action. Plaintiffs appeal of right. We affirm in part, reverse in part, and remand for further proceedings.

## Count I

In Count I, plaintiffs sought damages under MCL 750.146; MSA 28.343, which provides:

"All persons within the jurisdiction of this state shall be entitled to full and equal accommodations, advantages, facilities and privileges of inns, hotels, motels, government housing, restaurants, eating houses, barber shops, billiard parlors, stores, public conveyances on land and water, theatres, motion picture houses, public educational institutions, in elevators, on escalators, in all methods of air transportation and all other places of public accommodation, amusement, and recreation, subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike, *with uniform prices*. Rooming facilities at educational, religious, charitable or nonprofit institutions or organizations, and restrooms and locker room facilities in places of public accommodation may be separated according to sex." (Emphasis added.)

Defendants argue that § 146 cannot be considered in isolation from § 147,[1] which provides:

---

[1] MCL 750.147; MSA 28.344.

The legislative history of this statute is not illuminating. The forerunner of the present statute was enacted in 1885. Section 1 of that statute guaranteed full and equal accommodations to all persons. Section 2 provided that a denial of the rights secured by § 1 on the basis of race was a misdemeanor. *See Riegler v Holiday Skating Rink, Inc,* 393 Mich 607; 227 NW2d 759 (1975). The statute originally was aimed at preventing the propagation of "separate but equal" public facilities. *See Ferguson v Gies,* 82 Mich 358; 46 NW 718 (1890). It merely restated the common law. *Ferguson v Gies, supra.* An implied civil cause of action based on the statute was recognized in *Ferguson* and later added to the statute expressly by 1937 PA 117.

The phrase "with uniform prices" was added to § 146 in 1952. 1972 PA 116 expanded the statutory prohibition to include discrimination based on sex, national origin and blindness.

"*Any person* being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place *who shall directly or indirectly refuse, withhold from or deny* to any person any of the accommodations, advantages, facilities and privileges thereof or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communications, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such places shall be refused, withheld from or denied to any person on account of race, color, religion, national origin, sex or blindness or that any particular race, color, religion, national origin, sex or blindness is not welcome, objectionable or not acceptable, not desired or solicited, shall for every such offense be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $100.00 or imprisoned for not less than 15 days or both such fine and imprisonment in the discretion of the court; and every person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place, *and who violates any of the provisions of this section,* shall be liable to the injured party, in treble damages sustained, to be recovered in a civil action: Provided, however, That any right of action under this section shall be unassignable. In the event that any person violating this section is operating by virtue of a license issued by the state, or any municipal authority, the court, in addition to the penalty prescribed above, may suspend or revoke such license." (Emphasis added.)

Defendants correctly point out that plaintiffs have not alleged a refusal or denial of accommodations in Count I. Relying on *Riegler v Holiday Skating Rink, Inc,* 393 Mich 607; 227 NW2d 759 (1975), defendants conclude that Count I, based solely on § 146, fails to state a cause of action.

In *Riegler,* plaintiff, a male with long hair, sought to enjoin the defendant from excluding males from its premises because of the length of their hair. He relied on § 146, which, he con-

tended, guaranteed equal accommodations to "all persons". The Supreme Court held that § 146 had to be read in conjunction with §§ 147 and 148,[2] which at the time of that case proscribed discrimination based on "race, creed or color":

"We agree with the trial and appeals courts that the three sections should be read together and that so read § 146 was qualified by the limiting language of §§ 147 and 148 restricting the scope of the prohibition to denials of equal accommodations based on race, creed or color.

\* \* \*

"We conclude, based on the history of this legislation, the language of the statute, and earlier expressions of this Court, that the nature of the right secured by § 146 cannot be defined without reference to §§ 147 and 148." *Id.* at 611, 613–614.

Applying *Riegler* to the case at bar,[3] we hold that § 147 qualifies the broad language of § 146 for purposes of a civil cause of action. To maintain a civil action for damages, a plaintiff must at least allege a "withholding, refusal or denial" of public accommodations or illegal advertising.

There are two additional reasons for so holding.

---

[2] MCL 750.148; MSA 28.345, which provides:

"No citizen of the state of Michigan, possessing all other qualifications which are or may be prescribed by law, shall be disqualified to serve as grand or petit juror in any court of said state on account of race, creed or color, and any officer or other person charged with any duty in the drawing, summoning, and selection of persons who shall exclude from, fail, neglect and/or refuse, by words, trick and/or artifice, to draw the name of, summon and/or select any citizen for jury service because of his or her race, creed and/or color, shall be guilty of a misdemeanor and upon conviction shall be fined not less than fifty [50] dollars or shall be imprisoned for a period of not less than thirty [30] days, or both such fine and imprisonment in the discretion of the court."

[3] We assume without deciding that defendant tennis clubs are places of public accommodation within the meaning of §§ 146 and 147, an issue not raised by the parties below or on appeal.

First, the sentence of § 147 authorizing civil actions expressly states that such an action can be based only on violations "of the provisions *of this section"*. (Emphasis added.) The Legislature did not, as it could have, provide a civil action for violations of § 146. Rather, the civil action authorized is limited to violations of § 147. As stated above, plaintiffs did not allege a violation of § 147 in Count I.

Second, this being a penal statute, it is to be strictly construed. See, *e.g., Club Holding Co v Flint Citizens Loan & Investment Co,* 272 Mich 66; 261 NW 133 (1935).

As plaintiffs did not allege a withholding, refusal or denial of accommodations in Count I, summary judgment for failure to state a cause of action was proper.

## Count II

Plaintiffs' Count II alleged that defendants had circulated communications to the effect that plaintiffs would be refused, unwelcome and/or not desired or solicited, in violation of § 147.

Plaintiffs had requested descriptions or copies of defendants' advertising materials through interrogatories. Defendants refused to respond, stating that the request was too vague.

Summary judgment on Count II for failure to state a claim was improper; § 147 expressly authorized the claim embodied in Count II. The real question is the existence of an issue of fact whether defendants advertised that plaintiffs would be refused and/or were unwelcome or unsolicited. This was not addressed by the trial court and must be decided on remand. Plaintiffs' argument on appeal concerning their motion for an

order to answer interrogatories is more properly directed to the trial court on remand.

## Count III

As we held above, plaintiffs' membership contracts were not illegal as alleged in Count I. Therefore, there could be no unjust enrichment of defendants from allegedly illegal contracts. Count III was properly dismissed.

## Count IV

In Count IV, plaintiffs attempted to set forth a cause of action based on an alleged conspiracy:

"16. That the defendants have individually and jointly through defendant Michigan Indoor Tennis Association and its President, coverly and overtly conspired, planned, schemed, designed and aided and abetted in the establishment of a range of membership fees the effect of which is to discriminate monetarily against Plaintiffs in restraint of trade."

An allegation of conspiracy, standing alone, is not actionable. *Roche v Blair,* 305 Mich 608; 9 NW2d 861 (1943); 16 Am Jur 2d, Conspiracy, § 44, at 150. Plaintiffs must allege a civil wrong resulting in damage caused by the defendants. *Id.* As stated above, any "monetary discrimination" against plaintiffs is not actionable. Therefore, the trial court did not err in holding that Count IV failed to state a cause of action.

## Maintenance of Class Action

The trial court held that a class action was inappropriate in this case, finding that: (1) plaintiffs' interests are not coextensive with the inter-

ests of the class, (2) their interests "may" be in serious conflict with the interests of the class, (3) as to 9 of the 11 tennis clubs, there is a total absence of common issues of fact or law, and (4) common questions of law or fact do not predominate over individual questions as to the two clubs of which plaintiffs were members.

In *Grigg v Michigan National Bank,* 72 Mich App 358; 249 NW2d 701 (1976), this Court identified five requirements for maintaining a class action under GCR 1963, 208. They are: 1) numerous persons, 2) adequate representation, 3) common questions of fact or law affecting the rights of the several members, 4) common relief requested by the class, and 5) a class action is superior and/or manageable.[4] From our review of the record in this case, we find that plaintiffs have satisfied all five requirements. There are numerous persons affected; plaintiffs seek to represent all male members of defendant clubs. The effect of nonuniform membership fees is the common question of law, and recovery of fees paid by males is the common relief requested. The common question of law predominates over individual issues.[5] Plaintiffs also appear to be adequate representatives. They expressed a willingness to vigorously pursue their claim and pay for notice to the class members. Their interests are typical of the rest of the class. While there is some indication of a prior business relationship of plaintiff Magid to one of the attorneys,[6] it is not such as necessarily indicates inade-

---

[4] *But see Oakwood Homeowners Ass'n, Inc v Ford Motor Co,* 77 Mich App 197; 258 NW2d 475 (1977) (opinion by D. C. RILEY, J.).

We need not decide whether the Federal predominance requirement should be read into GCR 1963, 208. Assuming that predominance is a requirement, we find that it is satisfied in the case at bar.

[5] *See* note 4, *supra.*

[6] Mr. Magid, who is an attorney, and Mr. Colbert, one of plaintiffs' attorneys, apparently shared office space, but did not practice in a partnership or association.

quate representation. *Cf. Grigg v Michigan National Bank, supra.* Also, there is no record evidence of a prior relationship between plaintiff Soble and his counsel.

We hold that the trial court's "findings" as to the propriety of plaintiffs' class action were clearly erroneous.[7] They were not supported by facts of record.

The only finding in which there appears to be merit is that concerning the defendant class. Plaintiffs testified in deposition that they were members of 2 of the 11 defendant tennis clubs. However, Mr. Magid's membership at Square Lake Racquet Club apparently also included membership at at least two other clubs. This issue is important, because plaintiffs may not sue in a class action a defendant whom they could not individually sue. *Stutelberg v Practical Management Co,* 70 Mich App 325; 245 NW2d 737 (1976). We believe the best disposition is for the trial court to address this issue on remand, after plaintiffs have had an opportunity to discover any relationships between defendants.

Affirmed as to Counts I, III, and IV, reversed as to Count II and remanded for proceedings consistent with this opinion. No costs, neither party having prevailed in full.

---

[7] *Grigg v Michigan National Bank,* 72 Mich App 358; 249 NW2d 701 (1976), expressed some confusion over whether the standard on review should be "clearly erroneous" or "abuse of discretion". Under either standard, we hold that the trial court must be reversed.