VIDRICH v VIC TANNY INTERNATIONAL, INC

Docket No. 47037. Submitted June 20, 1980, at Lansing.—Decided December 2, 1980.

Arthur Vidrich, a legally blind person, sought membership in one of the health and exercise clubs owned by Vic Tanny International, Inc. Vidrich's application for membership was rejected by a representative of the health club because of insurance reasons. Vidrich brought in Washtenaw Circuit Court an action under the Michigan equal accommodations act, alleging that Vic Tanny International, Inc. had discriminatorily denied him membership in its club because of his blindness. Defendant answered that the rejection of plaintiff's application for membership was based upon concern for his safety rather than an intent to discriminate. Edward D. Deake, J., granted partial summary judgment in favor of plaintiff, holding that defendant was subject to the provisions of the equal accommodations act and that the only defense urged by the defendant which had validity was the defense that it was exempted from the provisions of that act by reason of safety considerations. A trial on the question of safety considerations was held before George D. Kent, J., who found, after hearing the proofs, that the nature of defendant's facilities was such that they could not be used in safety by the unsighted and that the defendant had no intent to discriminate but was rather concerned with plaintiff's safety. Accordingly, plaintiff's action was dismissed. Plaintiff appeals. Defendant cross-appeals. *Held:*

1. Since members in defendant's clubs have no control over club operations, own no equity in the club premises and receive no share of the club profits, the clubs run by defendant are not private clubs but, rather, are commercial enterprises run for profit. Defendant's health club, despite the lack of specific language in the Michigan equal accommodations act enumerating that such facilities are encompassed by the act, is within the class of businesses subject to the provisions of that act.

2. There exists no legislative exception in the language of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] 15 Am Jur 2d (Rev), Civil Rights § 49.

Businesses or establishments falling within state civil rights statute provisions prohibiting discrimination. 87 ALR2d 120.

Michigan equal accommodations act which permits a health and exercise club to deny membership to a blind person on the basis of a concern for such person's safety. On the contrary, the clear, unequivocal and absolute language of the Legislature in that act is that one may not deny equal accommodations, advantages, facilities and privileges on the basis of blindness. In the face of such unequivocal language, the judicial branch should not create by a fiat a "safety exception" to the provisions of that act. Such an exception should come, if at all, from the Legislature.

Affirmed in part; reversed in part.

1. CIVIL RIGHTS — EQUAL ACCOMMODATIONS — PRIVATE CLUBS — COMMERCIAL ENTERPRISE — STATUTES.

A health and exercise club in which the members have no control over club operations, own no equity in the club premises, and receive no share of the club profits is considered to be a commercial enterprise; accordingly, such a club is not exempt from the provisions of the Michigan equal accommodations act (MCL 750.146 *et seq.;* MSA 28.343 *et seq.).*

2. CIVIL RIGHTS — EQUAL ACCOMMODATIONS — HEALTH CLUBS — STATUTES.

A commercial health and exercise club is within the class of businesses which are subject to the provisions of the Michigan equal accommodations act, since such act provides for equal accommodations in "all places of public accommodation, amusement, and recreation" (MCL 750.146; MSA 28.343).

3. CIVIL RIGHTS — EQUAL ACCOMMODATIONS — HEALTH CLUBS — SAFETY — COURTS — STATUTES.

There exists no "safety exception" in the provisions of the Michigan equal accommodations act such as would permit a health and exercise club to deny membership to a blind person on the basis of a concern for that person's safety; a judicially created exception to the equal accommodation act would be improper, since the Legislature's language is clear, unequivocal and absolute on its face (MCL 750.146 *et seq.;* MSA 28.343 *et seq.).*

*Legal Services of Southern Michigan* (by *Roger Chard),* for plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by

*A. Albert Sugar* and *David L. Nelson),* for defendant.

Before: M. F. CAVANAGH, P.J., and D. E. HOL-
BROOK, JR., and J. H. PIERCEY,* JJ.

J. H. PIERCEY, J. This case presents a question of
first impression under the Michigan equal accom-
modations act, MCL 750.146 *et seq.;* MSA 28.343 *et
seq.* The issue is whether a legally blind person
may validly be refused unrestricted membership in
a health and exercise club on the ground that the
physical limitations deriving from his blindness
constitute a significant safety hazard effectively
precluding his safe use of club facilities. We recog-
nize no such "safety exception" to the equal ac-
commodations act and, consequently, reverse the
trial court's determination that defendant's exclu-
sion of plaintiff was proper.

In 1975, plaintiff, a legally blind person, visited
the Ann Arbor facility of defendant, Vic Tanny
International, Inc., a nationwide organization of
health and exercise clubs. Plaintiff's application
for membership in the club was thereafter rejected
by a club representative for insurance reasons.
Plaintiff filed suit, alleging that defendant had
discriminatorily denied him membership in its
club because of his blindness. Defendant answered,
asserting that its rejection of plaintiff's application
for membership was based upon concern for his
safety rather than upon any intent to discrimi-
nate. After partial summary judgment had been
granted to plaintiff, defendant's "safety issue" was
tried to the court on August 14 and 15, 1979, with
the trial judge concluding that defendant's "facili-
ties are of such a nature that they could not be

---

* Circuit judge, sitting on the Court of Appeals by assignment.

utilized in safety by unsighted, totally blind, or legally blind, individuals", and that defendant had "no intention to discriminate against persons who are blind, or to discriminate against this plaintiff; that the defendant's actions have been based on safety considerations".

Plaintiff now appeals the dismissal of his suit as the result of the trial court's ruling on the "safety issue". Defendant cross-appeals, claiming that the lower court erred reversibly by finding that defendant's business is a place of public accommodation under MCL 750.146; MSA 28.343.

At the heart of the present dispute are §§ 146 and 147 of the Michigan equal accommodations act. Section 146, MCL 750.146; MSA 28.343, provides in pertinent part:

"All persons within the jurisdiction of this state shall be entitled to full and equal accommodations, advantages, facilities and privileges of inns, hotels, motels, government housing, restaurants, eating houses, barber shops, billiard parlors, stores, public conveyances on land and water, theatres, motion picture houses, public educational institutions, in elevators, on escalators, in all methods of air transportation and all other places of public accommodation, amusement, and recreation, subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike, with uniform prices."

MCL 750.147; MSA 28.344 states in pertinent part:

"Any person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof * * * on account of race, color, religion, national origin, sex *or*

*blindness* \* \* \* shall for every such offense be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $100.00 or imprisoned for not less than 15 days or both such fine and imprisonment in the discretion of the court; and every person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place, and who violates any of the provisions of this section, shall be liable to the injured party, in treble damages sustained, to be recovered in a civil action." (Emphasis supplied.)

The threshold question to be decided is whether defendant's business is a place of public accommodation within the ambit of MCL 750.146; MSA 28.343. In answering this question affirmatively and awarding summary judgment to plaintiff on the issue, the trial judge recognized that it was essential to analyze a number of facts in deciding whether the defendant's facility was within the scope of the statute.

The trial judge observed that defendant "exhibits none of the indices of membership selectivity necessary to support its defense of private club status. 'Club' members have no say regarding admission or rejection of applicants for 'club' membership and there is no requirement that applicants obtain a recommendation from a 'club' member." The court additionally noted:

"Defendant's internal memorandum emphasizes the commercial nature of defendant's membership screening process; it lists the following factors to be considered when passing upon applicant's request for 'club membership': 1) financial responsibility; 2) communications problems; 3) emotionally disturbed people; 4) bodily hygiene, and 5) medical problems. Nowhere is any attention given to the protection of the personal associational preferences of its existing members or to the preservation of any modicum of exclusivity of member-

ship. Only the need to recognize certain minimal guidelines so as to maintain a profitable commercial enterprise is considered. Establishments which embrace this broad 'membership' policy can not be considered a truly private club. * * *

"Further is the requirement that the alleged private club not engage in broad-based advertising campaigns which indiscriminately seek new members from the public at large. * * * Such advertising acts as a bar to private club status which cannot be relaxed."

Finally, the lower court observed that "[p]rivate clubs whose members have no control over club operations, own no equity in club property or fail to receive a share of club profits are not legally considered to be private clubs; rather, these establishments are businesses operated for a profit and are not exempt from the scope of the [act]".

We concur with the trial court's conclusion that defendant's facility is not exempt from the Michigan equal accommodations act as a "private club". See *Nesmith v Young Men's Christian Ass'n of Raleigh, NC,* 397 F2d 96 (CA 4, 1968), *United States v Jordan,* 302 F Supp 370 (ED La, 1969).

Defendant, however, contends that the Michigan equal accommodations act does not operate with respect to health clubs or their like in the absence of specific language encompassing such facilities. This argument is without merit in light of the comprehensive wording of § 146 providing for equal accommodations in "all other places of public accommodation, amusement, and recreation". We hold that defendant's business is within the purview of that language. See *Riegler v Holiday Skating Rink, Inc,* 393 Mich 607; 227 NW2d 759 (1975), and *Magid v Oak Park Racquet Club Associates, Ltd,* 84 Mich App 522; 269 NW2d 661 (1978) (assuming, without deciding, that tennis clubs

were places of public accommodation within the meaning of §§ 146 and 147).

We turn next to an analysis of whether a so-called "safety exception" should be read into the equal accommodations act so as to modify its facially absolute prohibition against discrimination on account of blindness. Defendant asserts that blindness constitutes a physical handicap which is qualitatively different from other statutorily-enumerated factors as race or religion and that the physical limitations deriving from blindness should permit a "safety exception" precluding strict application of the act to the present facts, unlike alleged discrimination on account of race, color, religion, etc. Defendant maintains that because there exists a real quantum of difference between blindness—which deprives a person of a physical sense—and the negligible effects of skin color, birthplace, religious belief, or ancestry, it follows that considerations of safety contingent upon loss of sight permit the exclusion of a blind person from defendant's establishment without doing violence to the act.

In support of its argument, defendant cites by analogy § 302 of the Michigan Handicappers' Civil Rights Act, MCL 37.1302; MSA 3.550(302). That statute provides in pertinent part:

"Except where permitted by law, a person shall not:

"(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a handicap that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids."

Both parties properly recognize that the above-quoted provision is not controlling of the case at bar because the statute did not become effective until after the instant case was instituted, and plaintiff does not rely upon the handicappers' act for relief. Rather, defendant maintains that just as § 302 operates only where a handicap is unrelated to an individual's ability to utilize services, by analogy a "safety exception" should be judicially integrated into the equal accommodations act to preclude its application where, as here, plaintiff allegedly cannot utilize defendant's facility safely due to his handicap.

Without denigrating the cogency of defendant's arguments, we are not persuaded that a "safety exception" of the type sought for by defendant should be judicially incorporated into the equal accommodations act. Where, as here, the language of the act is clear, unequivocal, and absolute on its face, judicial construction or interpretation of the statutory language in the manner argued for by defendant would be improper. Our function is to give full credence to "the legislative will as we find it, without regard to our own views as to the wisdom or justice of the act". *McKibbin v Corporation & Securities Comm,* 369 Mich 69, 81; 119 NW2d 557 (1963).

We note that the limitation in § 302 of the handicappers' act was legislatively—not judicially —created. Furthermore, the Legislature has previously amended § 146 of the equal accommodations act by adding a limitation upon strict application of the act in certain areas of sex discrimination. Defendant's present arguments should therefore be directed to the Legislature which, if persuaded by them, can amend the equal accommodations act in the manner suggested by defendant. It is not

this Court's prerogative to alter the act by judicial fiat.

Since we find no "safety exception" to the equal accommodations act permissible, it is unnecessary to review the evidence regarding plaintiff's ability safely to utilize defendant's facility.

The trial court's award of partial summary judgment for plaintiff is affirmed. Its determination in favor of defendant on the "safety exception" issue is reversed and the case remanded to the lower court for entry of judgment for plaintiff on this issue. Costs to plaintiff.