THE DOCK CLUB, INC., d/b/a The N'Ferno, Plaintiff-Appellee, *v.* ILLINOIS LIQUOR CONTROL COMMISSION, Defendant-Appellant.

. Fourth District   No. 17088

Opinion filed November 19, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellant.

Burditt and Immel, of Springfield (Thomas J. Immel, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

We hold here that a practice of plaintiff, The Dock Club, Inc., in operating a licensed dramshop, to sponsor as a promotion, "ladies nights" whereby only females but not males were permitted to purchase drinks at a price reduced from plaintiff's regular price did not violate article VI, section 12b, of the Dramshop Act. That section provides:

"No licensee licensed under the provisions of this Act shall deny or permit his agents and employees to deny any person the full and equal enjoyment of the accommodations, advantages, facilities and privileges of any premises in which alcoholic liquors are

authorized to be sold subject only to the conditions and limitations established by law and applicable alike to all citizens." Ill. Rev. Stat. 1979, ch. 43, par. 133.

On January 18, 1980, defendant, Illinois Liquor Control Commission, issued a citation and notice of hearing against plaintiff setting forth dates upon which "ladies nights" had been held by plaintiff and charging the practice to violate section 12b of the Dramshop Act. On October 8, 1980, a hearing was held by defendant. On December 10, 1980, defendant issued an administrative order finding plaintiff to have violated section 12b and fining plaintiff $500. On January 7, 1981, defendant denied plaintiff's petition for rehearing. On January 13, 1981, plaintiff filed a complaint under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) in the circuit court of Sangamon County. After a hearing, the circuit court reversed the administrative order on March 13, 1981. Defendant has appealed.

Prior to the institution of the administrative proceedings, defendant. had complained to plaintiff about its practice of holding "ladies nights." On December 5, 1979, plaintiff filed suit in the circuit court of Sangamon County seeking primarily a declaratory judgment approving its use of the "ladies night" promotion. That court issued an interlocutory order enjoining defendant's pursuit of its citation proceedings then in process. On interlocutory appeal we reversed that order, holding that plaintiff was not entitled to relief prior to its exhaustion of its administrative remedies. *Dock Club, Inc. v. Illinois Liquor Control Com.* (1980), 83 Ill. App. 3d 1034, 404 N.E.2d 1050.

On appeal from the circuit court's reversal of the administrative order, the defendant Commission maintains that under both the literal language of article VI, section 12b, of the Dramshop Act and well-settled rules of construction, the section prohibits a dramshop from establishing a price differential determined by the sex of the customer. Plaintiff responds, arguing: (1) defendant had no standing "to litigate the rights of nonexistent third parties," (2) section 12b applies only to restriction upon entry and obtaining service in the establishment and does not prohibit charging different groups of people different prices for drinks, and (3) the imposition of the fine was improper even if a violation occurred.

■■ We summarily refute plaintiff's claim that defendant had no standing. Its theory arises from the decision in *Illinois Liquor Control Com. v. City of Joliet* (1975), 26 Ill. App. 3d 27, 324 N.E.2d 453, where the court held the Commission had no standing to challenge validity of a Joliet ordinance raising the drinking age to 21 years. The Commission claimed the rights of those 19 and 20 years of age were being violated, but the court stated the Commission had no standing to vindicate the constitutional rights of third parties. Here, the issue was whether plaintiff was in

violation of the Dramshop Act and article III, section 12(1) of the Act (Ill. Rev. Stat. 1979, ch. 43, par. 108(1)) which includes among the powers granted to defendant, the power to suspend or revoke licenses and to order fines against licensees for violation of the Act. Defendant was in the exercise of these statutory powers in conducting the instant administrative proceedings.

In examining the question of whether the practice of holding "ladies nights" was in violation of the Act, we are impressed with the lack of precedent. Article VI, section 12b, was part of the original Dramshop Act as adopted in 1934. No case involving a promotion by a dramshop whereby one class of customers may purchase drinks at reduced prices has been called to our attention, nor has any similar case arising under similar legislation concerning discrimination in the general furnishing of public accommodations. Ill. Rev. Stat. 1979, ch. 38, par. 13—2, repealed effective July 1, 1980 (see Ill. Rev. Stat., 1980 Supp., ch. 68, par. 5—101).

The only nearly similar case from another jurisdiction is *Magid v. Oak Park Racquet Club Associates, Ltd.* (1978), 84 Mich. App. 522, 269 N.W.2d 661, where the defendant club had a policy of offering discounted annual memberships to women as a promotion to attract more female members. The Michigan statute prohibited such a facility from denying "full and equal accommodations, advantages, facilities, and privileges." (Mich. Comp. Laws Ann. §750.146 (1968).) The court construed that section of the statute with other sections (Mich. Comp. Laws Ann. §750.147 (1968)) which provided for awards of damages upon "a withholding, refusal or denial" of public accommodations (84 Mich. App. 522, 527, 269 N.W.2d 661, 663). The court concluded that a cause of action arose only if there was a withholding, refusal, or denial of accommodations and did not arise from the existence of a price differential for membership.

Both sides discuss *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116, and *Walton Playboy Clubs, Inc. v. City of Chicago* (1962), 37 Ill. App. 2d 425, 185 N.E.2d 719. Both cases concern the right of access to a dramshop. In the former case the court held that a trier of fact could conclude that a would be patron to a dramshop was deprived of her rights under article VI, section 12b, when she was required to furnish an unreasonable amount of identification before being allowed to enter. The court stated: "The statute forbids the licensee to deny any person the full enjoyment of the accommodation, advantages, facilities and privileges." (56 Ill. App. 3d 463, 473, 371 N.E.2d 1116, 1124.) In *Walton Playboy Clubs, Inc.*, the appellate court affirmed a portion of a declaratory judgment ruling that a dramshop did not violate article VI, section 12b, or more general legislation entitling all persons "to the full and equal enjoyment of the accommodation, advantages, facilities and privileges of

* * * taverns * * *." (Ill. Rev. Stat. 1959, ch. 38, par. 125.) The claimed discrimination arose from the dramshop's requirement that all persons who entered the premises must have purchased a $50 membership, accompany one who had, or pay $50 upon seeking admission. The court noted that entry was conditioned upon a financial requirement applicable to all.

Legislation similar to article VI, section 12b, was enacted shortly after the Civil War (see *Walton Playboy Club, Inc.*) and has continued to this date with a most recent enactment being that of the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 *et seq.*). As far as the public accommodations aspect of this legislation has been concerned, the focus of its enactment and of the decisions interpreting it has been upon restrictions that denied the use of places of public accommodations and denial of receipt of the services there provided. Little, if any, consideration has been given to the propriety of price differentials imposed to obtain the service. However, we cannot agree that article VI, section 12b, like the Michigan statute interpreted in *Magid*, has no reference to price differentials that might be charged for obtaining the services furnished by the establishment. Section 12b is not subject to other provisions limiting a cause of action arising thereunder to "a withholding, refusal or denial" of service.

The references in section 12b to the "enjoyment of the accommodations, advantages, facilities and privileges" of a dramshop obviously includes the opportunity to obtain a drink of intoxicating liquor within the establishment. The furnishing of the same is the very purpose for which the establishment has been licensed under the Dramshop Act. The crucial question is whether the price differential denies persons, not able to obtain the lower price, the "equal enjoyment" of the facilities. Clearly, if the higher price was exacted for the purpose of discouraging those charged the higher price from patronizing the establishment, or if it had that effect, it would deny them of the equal enjoyment. Here, however, the price charged males on ladies night was the regular established price and obviously not a price established for the purpose of discouraging their patronage. That charged females was a price reduced to a nominal sum and one obviously set for the purpose of encouraging their patronage.

■■ Section 12b speaks of the dealings of dramshop operators with "any person." It does not state that their dealings with any class or classes of customers or prospective customers are suspect and no case has so held. As pointed out by plaintiff, to hold the statute to prohibit the practice of on occasion offering drinks at reduced prices to females would, by analogy, require holding it to prohibit a similar offering to (1) persons of Irish descent on St. Patrick's Day, (2) persons in the military or naval

service on Armed Forces Day, (3) certain conventioneers when conventions are being held in the city, (4) senior citizens, or (5) members of any other groups. Almost all businesses, on occasion, offer reduced prices to some sort of group, usually for the purpose of obtaining their business. The lack of any litigation over the offering of prices less than the usual rate for nearly 50 years under the Dramshop Act and for over 100 years under the various public accommodation statutes of this State indicates no evil sought to be remedied occurred here. We conclude that section 12b was not violated.

Accordingly, we need not consider the propriety of the fine imposed. We affirm the circuit court's reversal of the order of the defendant Commission.

Affirmed.

WEBBER and MILLS, JJ., concur.