ROLLIN FOODS, INC., as General Partner of Cody Coyotes Restaurant, Ltd., Plaintiff-Appellee, v. THE VILLAGE OF GLENDALE HEIGHTS, Defendant-Appellant (Du Page County State's Attorney, Defendant; Illinois Liquor Control Commission, Intervenor-Appellant).

Second District    No. 2—93—1251

───

Opinion filed February 1, 1995.

352

James E. Ryan, Attorney General, of Chicago (William K. Blanchard, Assistant Attorney General, of counsel), for appellant Illinois Liquor Control Commission.

Michael K. Durkin, of Storino, Ramello & Durkin, of Rosemont, for appellant Village of Glendale Heights.

William J. Wylie, of Wylie, Mulherin, Rehfeldt & Varchetto, P.C., and Anthony F. Mannina, both of Wheaton, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

This case arose after police officers arrested three employees of a restaurant and bar for allegedly violating the "Happy hours prohibited" statute, section 6—28 of the Liquor Control Act of 1934 (Act) (235 ILCS 5/1—1 *et seq.* (West 1992)). Following the arrests, plaintiff, Rollin Foods, Inc., filed an action for declaratory judgment and injunction in the circuit court of Du Page County. At issue is whether section 6—28 of the Act prohibited plaintiff from conducting a ladies' buffet night in its restaurant and bar.

Defendant, the Village of Glendale Heights (Village), and intervenor, the Illinois Liquor Control Commission (Commission) (collectively, defendants), appeal from an order of the circuit court in favor of plaintiff. The order determined that the relevant subsections of section 6—28 were constitutional and that section 6—28 did not prohibit the ladies' buffet night. On appeal, the sole issue is whether the trial court was correct in its judgment that section 6—28 did not prohibit the ladies' buffet night.

Cody Coyotes is a restaurant and bar in the Village. Plaintiff is the general partner in a limited partnership which owns and operates Cody Coyotes.

On the evening of August 13, 1992, Cody Coyotes offered a "Ladies' Buffet Night" for the first time. During the ladies' buffet night, women, as they entered Cody Coyotes, could pay $3 to purchase a buffet dinner with unlimited alcoholic drinks included. Women who purchased the buffet received a plastic cup as they entered. The women could use the plastic cup for unlimited free drinks for the night. Men who entered Cody Coyotes that night were required to pay a $3 cover charge, but they could not partake of the buffet, and they were required to pay the regular price for drinks. Women could enter Cody Coyotes without paying the cover charge, but they could not partake of the buffet and did not receive a plastic cup entitling them to free drinks.

The buffet was set up on a counter approximately 15 feet long near the kitchen in Cody Coyotes. The buffet consisted of bratwurst, hot dogs, egg rolls, Swedish meatballs, pizza, chicken nuggets, and various salads. A Cody Coyotes employee oversaw the buffet.

During the ladies' buffet night, four Village police officers in

plain clothes entered Cody Coyotes. The officers each paid $3 to enter. Upon entering, Cody Coyotes' employees gave each of the two female officers an empty plastic cup which they used to obtain an unlimited number of drinks of alcoholic liquor without additional payments. Cody Coyotes' employees informed the two male officers that the plastic cups were for women only. In order to get a drink of alcoholic liquor, the male officers were required to pay for each individual drink they ordered at the regular price. The police officers subsequently arrested three Cody Coyotes employees and charged them with violating section 6—28.

On August 25, 1992, plaintiff filed a two-count complaint against the Du Page County State's Attorney and the Village. The circuit court later dismissed the State's Attorney with prejudice. The Commission subsequently intervened.

Count I of plaintiff's complaint sought declaratory relief. Count II sought injunctive relief. Plaintiff contended that subsection (c) of section 6—28 was unconstitutionally vague and sought a declaration that the statute was unconstitutional. Alternatively, plaintiff contended that even if the statute was not unconstitutional, it did not prohibit the ladies' buffet night.

On June 30, 1993, the trial court issued an oral ruling. The court stated that it had concluded that section 6—28 was constitutional on its face and that plaintiff's conduct in offering the ladies' buffet night did not violate the statute. The trial judge directed the parties to draft an order in accordance with his ruling. However, the trial judge did not sign a written order at that time.

On September 28, 1993, after the parties had filed cross-motions for summary judgment, the trial judge signed and entered a written order. The order stated that the relevant subsections of section 6—28 were constitutional, that plaintiff's conduct did not violate section 6—28, and that plaintiff's conduct conformed to section 6—28. This appeal followed.

Section 6—28 of the Act provides, in pertinent part, as follows:
"(b)
No retail licensee or employee or agent of such licensee shall:
***
(2) sell, offer to sell or serve to any person an unlimited number of drinks of alcoholic liquor during any set period of time for a fixed price, except at private functions not open to the general public;
(3) sell, offer to sell or serve any drink of alcoholic liquor to any person on any one date at a reduced price other than that charged other purchasers of drinks on that day where such reduced price

is a promotion to encourage consumption of alcoholic liquor, except as authorized in paragraph (7) of subsection (c) [relating to cover charges for special entertainment];

* * *

(c) Nothing in subsection (b) shall be construed to prohibit a licensee from:
***
(2) including drinks of alcoholic liquor as a part of a meal package." 235 ILCS 5/6—28(b)(2), (b)(3), (c)(2) (West 1992).

Defendants contend that section 6—28 prohibits activities such as those of Cody Coyotes in offering its ladies' buffet night. Defendants assert that section 6—28 prohibits such activities because they violate the legislative intent of section 6—28 to promote moderation in the use of alcoholic liquors and place limits on the sale or service of alcoholic drinks to individuals. Defendants argue that this legislative intent is apparent from: (1) the plain language of section 6—28; (2) other provisions of the Act which provide for liberal construction of the Act; and (3) the legislative history of section 6—28.

Plaintiff responds that section 6—28, by its plain language, does not prohibit activities such as the ladies' buffet night. Plaintiff asserts that by resorting to other provisions in the Act and the legislative history of section 6—28 in order to discern legislative intent purportedly prohibiting such activities defendants are really improperly attempting to enlarge the plain language of section 6—28. Plaintiff further argues that because section 6—28 creates new liability for liquor licensees in that a violation of the statute is grounds for revocation or suspension of a license, the statute must be strictly construed.

The parties' arguments require us to construe the pertinent subsections of section 6—28. It is well established that, when interpreting a statute, the primary rule, to which all other rules are subordinate, is to ascertain the true intent of the legislature. (See, *e.g.*, *In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 246; *Krimmel v. Eielson* (1950), 406 Ill. 202, 206.) To determine legislative intent, the court must read the statute as a whole, consider all relevant parts (*People v. Lewis* (1994), 158 Ill. 2d 386, 389), and construe each provision in connection with every other section (*Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391, 397). The best determination of legislative intent is the statutory language, which should be given its plain and ordinary meaning. (*Eagan v. Chicago Transit Authority* (1994), 158 Ill. 2d 527, 531-32.) Where the statutory language is clear, the court must give it effect without resorting to other aids for construction. *Solich v. George & Anna*

*Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81.

With these principles in mind, we will construe section 6—28 of the Act by examining its language with a particular focus on the relationship between subsections (b) and (c). It is readily apparent from the language of section 6—28 that subsection (b) consists of a list of prohibited conduct regarding retail liquor licensees and that subsection (c) consists of a list of conduct not prohibited by subsection (b). Nonetheless, the question remains whether section 6—28 means that a retail liquor licensee engaging in conduct listed in subsection (c) can disregard the prohibitions of subsection (b).

Initially, we will determine whether paragraph (3) of subsection (b), by itself, prohibited the ladies' buffet night activities conducted by plaintiff. We will not make the same determination with respect to paragraph (2) of subsection (b) because a question whether paragraph (2) of subsection (b) is unconstitutionally vague has been raised. It is well settled that constitutional questions will not be considered if the cause can be determined on other grounds. (*People ex rel. Waller v. 1990 Bronco* (1994), 158 Ill. 2d 460, 464; *Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 321.) In making this determination, we disregard, for the moment, subsection (c). If paragraph (3) of subsection (b), by itself, prohibited the ladies' buffet night activities, then we must determine whether subsection (c) provides exceptions to the prohibitions of paragraph (3) of subsection (b).

■ Paragraph (3) of subsection (b) prohibits a retail licensee and his or her agent or employee from selling, offering to sell, or serving "any drink of alcoholic liquor to any person on any one date at a reduced price other than that charged other purchasers of drinks on that day where such reduced price is a promotion to encourage consumption of alcoholic liquor, except as authorized in paragraph (7) of subsection (c) [relating to a cover charge to offset the cost of special entertainment not regularly scheduled]" (235 ILCS 5/6—28(b)(3) (West 1992)). Paragraph (3) of subsection (b), by itself, therefore prohibited the ladies' buffet night activities because women who purchased the buffet were served alcoholic drinks at a price other than that charged to men who purchased alcoholic drinks on that night, and a cover charge related to special entertainment was not involved in the ladies' buffet night. In addition, we agree with defendants that the reduced price encouraged the consumption of alcoholic liquor.

Thus, paragraph (3) of subsection (b), standing alone, prohibited the ladies' buffet night. However, subsection (c)(2) of section 6—28

provides that "[n]othing in subsection (b) shall be construed to prohibit a licensee from: *** (2) including drinks of alcoholic liquor as part of a meal package." (235 ILCS 5/6—28(c)(2) (West 1992).) In view of this language in subsection (c), the question before us is whether the prohibitions of paragraph (3) of subsection (b) lose their effect in the face of the activities allowed by subsection (c).

Here, the parties agree that the ladies' buffet night, as conducted by plaintiff, constituted a meal package which included drinks of alcoholic liquor. Specifically, then, the question before us is whether the prohibitions of paragraph (3) of subsection (b) lost their effect because the drinks involved were part of a meal package.

■ We conclude that the language of section 6—28 shows a legislative intent for the subsection (b) prohibitions to remain effective in the face of the activities listed in subsection (c). The language in subsection (c) simply states that "[n]othing in subsection (b) shall be construed to prohibit a licensee from" engaging in any of the activities listed in subsection (c). We read the plain meaning of this language to be that the activities listed in subsection (c) are not *per se* prohibited by subsection (b). However, we do not read this language to mean, as plaintiff urges, that the subsection (c) activities are exceptions to the subsection (b) prohibitions in the sense that a licensee engaging in subsection (c) activities may disregard the subsection (b) prohibitions.

The fact that the legislature made one of the subsection (c) activities a specific exception to one of the subsection (b) prohibitions supports our interpretation. The legislature made paragraph (7) of subsection (c) a specific exception to paragraph (3) of subsection (b) (see 235 ILCS 5/6—28(b)(3) (West 1992)). This leads us to conclude that the legislature did not regard the other activities listed in subsection (c) as exceptions to the subsection (b) prohibitions in the sense urged by plaintiff. If the legislature had regarded the subsection (c) activities as exceptions in that sense, it would have been unnecessary for the legislature to make paragraph (7) of subsection (c) a specific exception as it did because it would have already been such an exception.

In summary, based on the plain language of section 6—28, we conclude that the legislature did not intend paragraph (2) of subsection (c) to be an exception to the prohibitions of paragraph (3) of subsection (b). Rather, the legislature intended to list in subsection (c) activities which subsection (b) did not *per se* prohibit. Thus, paragraph (3) of subsection (b) does not prohibit the inclusion of alcoholic drinks as part of a meal package. However, paragraph (3) of subsection (b) prohibits the selling, offering to sell, or serving of

alcoholic drinks to persons on any one date at a reduced price other than that charged other purchasers of drinks on that day where the reduced price promoted or encouraged the consumption of alcoholic liquor, even if this occurs as part of a meal package, as it did in the ladies' buffet night. For these reasons, we conclude that paragraph (3) prohibited the ladies' buffet night as conducted by plaintiff.

Under the above principles, in order to determine legislative intent, we must read the statute as a whole and consider all relevant parts. Accordingly, we must consider section 1—2 of the Act (235 ILCS 5/1—2 (West 1992)), which expressly provides for the correct way to construe the Act. Section 1—2 furnishes additional support for the above construction of section 6—28. Section 1—2 provides as follows:

> "This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." 235 ILCS 5/1—2 (West 1992).

■ The above construction of section 6—28 is in line with the purpose of the Act as expressed in section 1—2. This construction of section 6—28 will tend to protect the health, safety, and welfare of the people of the State of Illinois and foster and promote temperance in the consumption of alcoholic liquors. A construction such as that urged by plaintiff would tend to encourage the binge drinking of alcoholic liquors and all of the deleterious consequences which flow from that, a result obviously contrary to the purpose of the Act as expressed by the legislature when it set out the guidelines for construction of the Act in section 1—2.

■ Plaintiff's argument that we must strictly construe section 6—28 because it creates new liability for retail liquor licensees does not change our view of section 6—28. Plaintiff asserts that section 6—28 creates new liability for licensees because it provides that a violation of the statute shall be grounds for the suspension or the revocation of the retailer's license (235 ILCS 5/6—28(d) (West 1992)). Plaintiff cites *Anderson v. Board of Education of School District No. 91* (1945), 390 Ill. 412, 422, for the proposition that a court must strictly construe a statute creating new liability in favor of parties who could be subjected to the operation of the statute and must not extend or enlarge the liability by construction. Although plaintiff's argument is sound, it is unpersuasive because we have already done what plaintiff asks, *i.e.*, we have strictly construed the statute. As seen above, the plain language of the statute supports our construc-

tion of the statute. Accordingly, we need not change our construction of section 6—28 on the ground that it creates new liability for retail liquor licensees.

■ Finally, plaintiff relies on *Dock Club, Inc. v. Illinois Liquor Control Comm'n* (1981), 101 Ill. App. 3d 673, as authority for its position that section 6—28 does not prohibit a licensee from offering price differentials for alcoholic drinks on the basis of gender. However, the court in that case did not construe section 6—28. The statute in *Dock Club* provided that no person should be denied " 'the full and equal enjoyment of the accommodations, advantages, facilities and privileges of any premises in which alcoholic liquors' " are sold. (*Dock Club*, 101 Ill. App. 3d at 673-74, quoting section 12b of the Dramshop Act (Ill. Rev. Stat. 1979, ch. 43, par. 133).) This is much different from paragraph (3) of subsection (b) of section 6—28, which prohibits reduced prices for drinks to some persons but not others as a promotion to encourage the consumption of alcoholic liquor. Consequently, we find plaintiff's reliance on *Dock Club* misplaced.

Based on the foregoing, we hold that paragraph (3) of subsection (b) of section 6—28 of the Act prohibited plaintiff's conduct in offering the ladies' buffet night. For this reason, we reverse the trial court order in favor of plaintiff.

Reversed.

BOWMAN and COLWELL, JJ., concur.