TUCICH v DEARBORN INDOOR RACQUET CLUB

Docket No. 45926. Submitted April 21, 1981, at Detroit.—Decided June 30, 1981. Leave to appeal applied for.

Paul J. Tucich brought an action in Wayne Circuit Court on behalf of himself and all other similarly situated males against the Dearborn Indoor Racquet Club, other tennis clubs, and the Michigan Indoor Tennis Association and its president, alleging sex discrimination on behalf of the tennis clubs under §§ 146 and 147 of the public accommodations act (Counts I and II), an illegal contract (Count III), a conspiracy (Count IV) and a class action (Count V). The court, Joseph B. Sullivan, J., dismissed the claims against all defendants except Dearborn Indoor Racquet Club, the only club of which plaintiff was a member. Later, the court dismissed the claim against Dearborn Indoor Racquet Club. Plaintiff appeals. Dearborn Indoor Racquet Club cross-appeals the court's ruling that plaintiff could maintain a class action against it. *Held:*

1. Dismissal was appropriate on Count I, which was under § 146 of the public accommodations act, because the plaintiff did not allege a withholding, refusal or denial of accommodations as is necessary to maintain a civil action for damages under § 146. The Elliott-Larsen Civil Rights Act did not repeal or replace any part of the public accommodations act, nor does it have retroactive application.

2. An advertised price differential is not a violation of § 147 per se. Nothing in the advertising material implied a denial or withholding of club facilities. Dismissal of Count II was proper.

3. Count III which alleged that the defendants were unjustly enriched by the illegal contracts was properly dismissed because the contracts were not illegal.

4. The trial court did not err in holding that Count IV failed to state a cause of action. That count contained an allegation of conspiracy, which is not actionable without an allegation of a civil wrong resulting in damage caused by the defendants.

5. Although plaintiff would have standing to assert his claims

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 15 Am Jur 2d (Rev), Civil Rights § 28 *et seq.*
[2] 73 Am Jur 2d, Statutes §§ 347, 350, 351.

against defendants of which he was not a member, he failed to assert valid causes of action against them. Thus, the trial court properly dismissed the class action against the other defendants.

Affirmed.

1. CIVIL RIGHTS — STATUTES.

The Elliott-Larsen Civil Rights Act did not repeal or replace any part of the public accommodations act (MCL 37.2101 *et seq.,* 750.146 *et seq.;* MSA 3.548[101] *et seq.,* 28.343 *et seq.).*

2. CIVIL RIGHTS — STATUTES — RETROACTIVITY.

The Elliott-Larsen Civil Rights Act does not have retroactive application; a statute should not be applied retroactively unless the Legislature clearly and unequivocally expresses that intent (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

3. CIVIL RIGHTS — PRICE DIFFERENTIALS — ACTIONS — STATUTES.

An advertised price differential is not a violation of the public accommodations act per se; in order to maintain a civil action under the act, a plaintiff must allege a withholding, refusal or denial of public accommodations or illegal advertising (MCL 750.146 *et seq.;* MSA 28.343 *et seq.).*

*Gary A. Colbert* and *Barry A. Seifman,* for plaintiffs.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John Corbett O'Meara* and *Robert P. Ufer,* and *Jeffrey M. Petrash,* of counsel), for defendants.

Before: N. J. KAUFMAN, P.J., and ALLEN and D. C. RILEY, JJ.

PER CURIAM. In August, 1975, plaintiff, a member of defendant Dearborn Indoor Racquet Club, filed the instant class action suit in Wayne County Circuit Court on behalf of himself and all males similarly situated. Defendants are the Dearborn Indoor Racquet Club, five other tennis clubs in the Wayne County area, the Michigan Indoor Tennis Association and Edward C. Roney, Jr., its presi-

dent. Suit against all defendants is based on the differential price charged for male and female memberships. In the case of the Dearborn Club the membership charge was $85 for males and $65 for females. Similar, though not identical, differential charges were made by the other five named defendant clubs. Plaintiff claims that the differential membership charge is in violation of the Michigan public accommodations act, 1931 PA 328, MCL 750.146 *et seq.;* MSA 28.343 *et seq.,* is an illegal contract and constitutes a conspiracy in restraint of trade.

On December 1, 1975, defendants filed an omnibus motion to dismiss. May 4, 1976, the trial court dismissed the complaint as to all defendants except Dearborn Indoor Racquet Club. January 26, 1977, the remaining defendant, Dearborn Indoor Racquet Club (Dearborn Club) filed a motion for summary judgment. Following oral argument the trial judge granted the motion and on February 23, 1977, an order dismissing the case with prejudice was entered. Plaintiff moved for rehearing but the matter lay dormant for almost two years until February 26, 1979, when the Dearborn Club moved to dismiss plaintiff's motion for rehearing. On June 15, 1979, the trial court denied plaintiff's motion for rehearing and reaffirmed his earlier order granting summary judgment. From this order plaintiff appeals of right.

At a deposition hearing, plaintiff stated that he joined the Dearborn Club in June of 1975 but never played tennis there or, prior to instituting suit, had even entered the club building for the reason that the weather outside had been favorable. He stated he was not a member of the other defendant tennis clubs but had received mail from them soliciting his joining. He further stated that

he had no knowledge of anyone who was denied access to the Dearborn Club or any of the other named clubs except through differential annual membership fees. He stated that his legal counsel in the instant action shared law offices with Martin K. Magid, plaintiff in a companion class action suit filed in Oakland County Circuit Court at the same time as the instant case. That case, encaptioned *Magid v Oak Park Racquet Club Associates, Ltd,* is reported at 84 Mich App 522; 269 NW2d 661 (1978).[1]

In support of the motion for summary judgment counsel for defendant Dearborn Club states that the differential membership fee was a marketing device to persuade women who did not work during the day to use the club during day hours. Counsel also argued by way of an affidavit from club management that the fee differential was justified by disparate costs of providing separate locker room, separate toilet and other gender-related facilities. In denying plaintiff's motion for a rehearing the trial court indicated that summary judgment in favor of the Dearborn Club was granted because "the construction maintenance cost justified the differential fee". The court further stated that a difference in the fee charged did not per se constitute discrimination and that "the use of the courts, the cost of the facility, and certainly the entire aim of the organization involved was in no way indirectly excluding or discriminating against men".

Plaintiff's complaint contains five counts. Count

---

[1] In his brief plaintiff explains that "[t]he instant case was put on the 'back burner' while several issues common to both cases were before this court" and "[w]hile the court addressed some of the issues raised herein in *Magid,* appellant is again submitting the issues not only because they are present in this case, but because appellant feels that he can shed additional light on them."

I alleges that charging a membership fee which is higher for men than for women violates § 146 of the Michigan public accommodations act, MCL 750.146; MSA 28.343. Count II alleges that certain advertising contained in brochures disseminated by the tennis clubs violates § 147 of the Michigan public accommodations act, MCL 750.147; MSA 28.344. Counts III and IV allege that the contracts between the class members and the clubs were illegal and the defendant Michigan Indoor Tennis Association conspired in restraint of trade. Count V contains class action allegations and seeks damages for members of the class of $3 million, plus treble damages of $9 million, plus punitive damages of $12 million.

## COUNTS I, III AND IV

In response to a question from this Court at oral argument, plaintiff's counsel stated that, except for the names of the parties and the dates, the allegations contained in Counts I, III and IV in the instant case were identical to the allegations found in Counts I, III and IV in *Magid v Oak Park Racquet Club, supra.* In that case a different panel of this Court held:

"As plaintiffs did not allege a withholding, refusal or denial of accommodations in Count I, summary judgment for failure to state a cause of action was proper.

* * *

"As we held above, plaintiffs' membership contracts were not illegal as alleged in Count I. Therefore, there could be no unjust enrichment of defendants from allegedly illegal contracts. Count III was properly dismissed.

* * *

"An allegation of conspiracy, standing alone, is not

actionable. *Roche v Blair,* 305 Mich 608; 9 NW2d 861 (1943); 16 Am Jur 2d, Conspiracy, § 44, at 150. Plaintiffs must allege a civil wrong resulting in damage caused by the defendants. *Id.* As stated above, any 'monetary discrimination' against plaintiffs is not actionable. Therefore, the trial court did not err in holding that Count IV failed to state a cause of action." 84 Mich App 522, 528, 529.

Though this Court has the option to disregard the prior opinion of a separate panel, we find no reason to do so in the instant case. The facts in the present case are so similar to those in *Magid* "as to be nearly congruent". *Danyo v Great Lakes Steel Corp,* 93 Mich App 91, 96; 286 NW2d 50 (1979). Accordingly, we hold that as to Counts I, III and IV *Magid* controls.

However, as to Count I, plaintiff does raise an issue which was not raised in *Magid.* Plaintiff contends that the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* has replaced the Michigan public accommodations act and further, that even if it has not replaced the former statute, Elliott-Larsen should be applied retroactively. We disagree on both grounds. Elliott-Larsen did not become effective until almost two years after plaintiff initiated the present action.[2] Furthermore, it does not repeal or replace any part of the public accommodations act. See MCL 37.2804; MSA 3.548(804). A statute is not applied retroactively unless the Legislature clearly and unequivocally expresses that intent. *Fletcher v Aetna Casualty & Surety Co,* 80 Mich App 439, 445; 264 NW2d 19 (1978), *aff'd* 409 Mich 1 (1980). No section of the statute states or remotely suggests that it is to be retroactively applied.

Plaintiff also raises an issue, not addressed in

[2] 1976 PA 453, effective March 31, 1977.

*Magid,* that the trial court improperly based its decision on the assumption that plaintiff was a member of the Dearborn Club only for the purpose of bringing suit. While the court did suggest such fact in ruling on the motion for summary judgment, at the motion for rehearing the court denied any such assumption.[3]

## Count II

Section 147 of the public accommodations act reads in relevant part:

"Any person * * * who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof or directly or indirectly publish * * * any written or printed communications * * * *to the effect that any of the accommodations, advantages, facilities and privileges of any such places shall be refused, withheld from or denied to any person on account of * * * sex * * * or that any particular * * * sex * * * is not welcome, objectionable or not acceptable, not desired or solicited,* shall * * * be deemed guilty of a misdemeanor * * *; and every person being an owner * * * and who violates any of the provisions of this section, shall be liable to the injured party, in treble damages sustained, to be recovered in a civil action." (Emphasis supplied.)

In *Magid, supra,* the defendant tennis clubs had refused to furnish plaintiff with copies of the advertising materials which described the alleged

---

[3] "I stated at that time briefly on the record that I did not make a finding of fact as to whether or not the plaintiff, Mr. Tucich, joined this club for the sole purpose of bringing this law suit. Certainly based on what has been before me, one might arrive at that conclusion, but it would only be conjecture since there has been no testimony and no allegation of fact other than Mr. Tucich's own Affidavit, and, therefore, I can make no finding at that time, and would attempt to make no finding."

differential rates and privileges. Because the advertising was unavailable, this Court reversed the trial court's grant of summary judgment and remanded to determine:

"[W]hether defendants advertised that plaintiffs would be refused and/or were unwelcome or unsolicited. This was not addressed by the trial court and must be decided on remand." *Id.,* 528.

In the case before us copies of all advertising material of the Dearborn Club were attached to the affidavit of Ted Jax, the club manager. In response to the Jax affidavit the plaintiff filed his own affidavit to which he attached copies of the advertising material in dispute. Thus, as to Count II, we have the alleged printed communications which the Dearborn Club published, circulated or mailed, and can ourselves determine without remand whether § 147 has been violated.

The language "with uniform prices" which is found in § 146 does not appear in § 147. Therefore, the advertised price differential does not *in itself* constitute a violation of the statute. Violation occurs if the advertising states or fairly implies that the club facilities are denied, withheld, or refused on account of sex, or that any particular sex is not acceptable, welcome, or solicited. We have carefully examined the brochures and advertising material and find nothing therein which states or implies a withholding or denial of club facilities. To the contrary, the price differential is designed to encourage membership and make the club facilities more available to both sexes. At the deposition hearing plaintiff conceded that the purpose of the advertising was to encourage both male and female membership.

*"Q. (By Mr. Ufer, continuing):* What is your opinion as to the purpose of that advertisement? Is it to encourage male membership in the club?

*"A.* It is to encourage membership.

*"Q.* Is it to encourage male membership?

*"A.* Membership-at-large.

*"Q.* Male and female?

*"A.* Male, female, whatever.

*"Q.* It is to encourage membership on an equal basis?

*"A.* Not an equal basis.

*"Q.* Aside from the rate differential?

*"A.* Aside from that, I would speculate that it is fair."

There being no evidence that plaintiff was not welcome, not desired or not solicited or that the club facilities were denied or withheld, we conclude that summary judgment was properly entered for defendant on Count II.

## Count V

The final issue concerns the propriety of the trial court's rulings on the maintenance of a class action. The trial court ruled that plaintiff might maintain a class action against the defendant club of which plaintiff was a member. Defendant Dearborn Club has filed a cross-appeal on this issue. The trial court also held that plaintiff could not maintain a class action against the five defendants of which he was not a member. From this ruling plaintiff has appealed.

As to the ruling that plaintiff might maintain a class action against the Dearborn Club, we find no error. However, the matter becomes moot in view of the fact that, though the class action was proper, summary judgment was properly granted in favor of the Dearborn Club as to Counts I, II, III and IV.

Did the trial court err when it dismissed the class actions against the five defendants of which plaintiff was not a member? We think not. Clearly, plaintiff has no cause of action under § 146 against a club of which he is not a member. Further, one may not sue in a class action a defendant whom one could not sue individually. *Stutelberg v Practical Management Co,* 70 Mich App 325, 341; 245 NW2d 737 (1976), *Magid, supra,* 531. Theoretically plaintiff may maintain a class action suit under § 147 against clubs of which he is not a member. He claims he received published material to the effect he would not be welcome or acceptable at those clubs. Thus, plaintiff would have standing to sue those defendants if the publications were a violation of the statute. But, as discussed in Count II, the publications were not a violation of the statute. Thus, although plaintiff would have standing to assert his claims against defendants of which he was not a member, he has failed to assert a valid cause of action against them. Accordingly, the trial court properly dismissed the class action against the five named clubs.

Affirmed. Costs to defendants.