CLARKE v K MART CORPORATION

Docket No. 135739. Submitted November 3, 1992, at Grand Rapids.
   Decided December 21, 1992, at 9:50 A.M. Leave to appeal
   sought.

   Dorothy Clarke brought an action in the Kalamazoo Circuit
   Court against K mart Corporation, alleging racial discrimina-
   tion, false imprisonment, intentional infliction of emotional
   distress, and assault and battery after shopping at one of the
   defendant's stores and being detained briefly by store employ-
   ees in their efforts to ascertain whether a cashier had properly
   charged the plaintiff for an item and whether the plaintiff had
   paid for the item. The court, William G. Schma, J., granted
   summary disposition for the defendant with respect to all
   claims except the claim of assault and battery. The plaintiff
   appealed the grant of partial summary disposition, and the
   defendant cross appealed the denial of summary disposition of
   the claim of assault and battery.

   The Court of Appeals *held:*

   1. Remand is required for reconsideration of the civil rights
   claim based on an alleged denial of the full and equal enjoy-
   ment of the defendant's goods, services, and accommodations,
   MCL 37.2302(a); MSA 3.548(302)(a). In all civil rights claims,
   the plaintiff must show either disparate treatment or inten-
   tional discrimination. If the plaintiff does so, the defendant
   must establish a legitimate reason for its actions. If the defen-
   dant does so, the plaintiff must show that the proffered reason
   is a mere pretext.

   2. The plaintiff failed to state a claim under the equal
   accommodations act, MCL 750.147; MSA 28.344, because she
   did not allege a denial of the privilege of shopping at the
   defendant's store.

   3. The claim of false imprisonment was summarily dismissed
   in error in light of unresolved questions concerning whether

REFERENCES

Am Jur 2d, Assault and Battery §§ 5, 37, 111; Civil Rights §§ 4, 7,
   14, 56, 102, 261-262; False Imprisonment §§ 5-37, 91-95.
See the ALR Index under Assault and Battery; Civil Rights and
   Discrimination; False Imprisonment and Arrest.

the plaintiff was detained because of the cashier's suspected wrongdoing or the plaintiff's suspected wrongdoing.

4. The claim of intentional infliction of emotional distress was properly dismissed, given that the alleged conduct imputed to the defendant was not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community.

5. The trial court did not err in denying summary disposition of the claim of assault and battery in light of the factual question concerning whether store employees snatched a bag from the plaintiff's hands or removed it from her shopping cart.

Affirmed in part, reversed in part, and remanded.

1. CIVIL RIGHTS — CIVIL RIGHTS ACT — EQUAL AND FULL ENJOYMENT OF PUBLIC ACCOMMODATIONS.

A claim under the Civil Rights Act for the alleged denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or service because of religion, race, color, national origin, age, sex, or marital status should be tested in the same manner as other claims under the Civil Rights Act: the plaintiff must show either disparate treatment or intentional discrimination; if the plaintiff does so, the defendant must establish a legitimate reason for its actions; and, if the defendant does so, the plaintiff must show that the proffered reason is a pretext (MCL 37.2302[a]; MSA 3.548[302][a]).

2. TORTS — FALSE IMPRISONMENT.

False imprisonment is the unlawful restraint of a person's liberty or freedom of locomotion and can occur where a store owner seizes and retains a customer's property and the customer reasonably believes that leaving the store entails the risk of losing the property.

3. ASSAULT AND BATTERY — TORTS.

A battery occurs where there is a wilful, harmful, or offensive touching of the plaintiff or of an object that is attached to and practically identified with the plaintiff's body.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita* and *Sandy L. Steiner*), for the plaintiff.

*York & Miller, P.C.* (by *Michael J. Miller*), for the defendant.

Before: HOOD, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM. Plaintiff, Dorothy Clarke, appeals from the trial court's grant of summary disposition for defendant, K mart Corporation, under MCR 2.116(C)(8) and (10) with respect to her claims of discrimination, false imprisonment, and intentional infliction of emotional distress.[1] Defendant cross appeals from the denial of its motion for summary disposition of plaintiff's claim of assault and battery. We affirm in part, reverse in part, and remand.

Plaintiff, her two small children, and her sister had shopped at defendant's store and purchased many items, including a set of bed sheets. While the items were being rung up, the cashier, an African-American like the plaintiff, accidentally rang up the sheets twice. She set them aside while the overring was voided, then placed the sheets directly in plaintiff's bag.

Defendant's cashier supervisor saw only the last portion of this transaction, i.e., the sheets being placed in the bag without being rung up. She waited until plaintiff was about to leave and approached her with another supervisor.

According to plaintiff, the second supervisor snatched the bag out of her hand. According to defendant, the supervisor took the bag out of plaintiff's shopping cart, not out of her hand. Plaintiff was told that this was a routine package check, and she was detained for about ten or fifteen minutes while the items were matched with her receipt. Plaintiff was given $10 for her inconvenience.

Defendant denied that the stop was racially motivated. According to defendant, it suspected

---

[1] On appeal, plaintiff has abandoned her claim of negligent training and supervision.

the cashier, not plaintiff, of wrongdoing. This suspicion allegedly was due to the fact that the cashier, who was new, asked during her training a lot of questions regarding overrings, voids, and scanning versus manually ringing up items. From these questions, defendant's employees deduced that the cashier was trying to give away or underring merchandise. Additionally, two African-American women had been seen earlier that day trying to go through the cashier's checkout lane while the cashier was on break, wandering around the store with the cashier, and then leaving without buying anything.

Plaintiff first argues that defendant violated § 302 of the Civil Rights Act, which provides:

> Except where permitted by law, a person shall not:
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status. [MCL 37.2302; MSA 3.548(302).]

A "place of public accommodation" is defined as, among other things, "a business . . . whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a); MSA 3.548(301)(a). There is no question that defendant fits this definition.

The trial court granted defendant's motion for summary disposition of this claim, determining that "there was no evidence of a denial of plaintiff's right of access to the goods, facilities, and enjoyment of the premises in question and that the [defendant's] actions . . . concerned the cashier as opposed to the plaintiff."

We disagree with defendant and the trial court that a plaintiff must show an outright denial of access to a defendant's goods, premises, or facilities. Rather, we believe that a violation of § 302(a) occurs where a person is denied "full and *equal* enjoyment of the goods, services, facilities . . . " provided by the defendant. The construction advocated by defendant would make the emphasized language superfluous.

We believe that the appropriate test is the same as that used under other sections of the Civil Rights Act. Plaintiff must first show either disparate treatment or intentional discrimination; if the plaintiff does so, defendant must establish a legitimate reason for its actions; if the defendant does so, plaintiff must then show that the reason proffered are mere pretext by showing that they lack credibility or that a discriminatory motive was a more likely reason for the action. See *Rasheed v Chrysler Motors Corp,* 196 Mich App 196; 493 NW2d 104 (1992). Because the trial court did not proceed under this test, we remand for reconsideration in light of this opinion and the case law developed under other sections of the Civil Rights Act.

We recognize that there are cases that state that an actual denial or refusal of accommodations is necessary in order to state a cause of action. See *Tucich v Dearborn Indoor Racket Club,* 107 Mich App 398, 402-403; 309 NW2d 615 (1981); *Magid v Oak Park Racket Club Associates, Ltd,* 84 Mich App 522, 526-528; 269 NW2d 661 (1978). However, these cases involve claims brought under the equal accommodations act, MCL 750.147; MSA 28.344, where it was argued that the unequal membership fees charged to men and women for joining these clubs were discriminatory. Neither case involved the Civil Rights Act; the act was not even in effect

when the alleged violations occurred. See *Tucich, supra* at 403. There are no similar cases decided under the Civil Rights Act.

Plaintiff, however, also claims a violation of the equal accommodations act. That act states that "[a]ll persons . . . shall be entitled to full and equal accommodations, advantages, facilities and privileges of . . . stores," among other things. MCL 750.146; MSA 28.343. The enforcement section of this act makes it a misdemeanor to "directly or indirectly *refuse, withhold from or deny* to any person any of the accommodations, advantages, facilities and privileges" of stores and further allows civil enforcement and treble damages. (Emphasis added.) MCL 750.147; MSA 28.344.

As seen above, the enforcement language of this act, unlike that of the Civil Rights Act, is reasonably susceptible to the construction placed upon it by the *Magid* and *Tucich* Courts. Because plaintiff does not claim a refusal or denial of the privilege of shopping at defendant's store, we agree that she has failed to state a claim under this act.

We next examine plaintiff's claim of false imprisonment. In this regard, the trial court found that there was "no indication that there was a restriction in the plaintiff's freedom of movement" and that she "was not arrested nor detained in an office, [that] she was free to roam through the store and, in fact was free to leave if she wished to" do so. Although these observations may be technically accurate, we believe that the court's holding rests on an unduly narrow view of this tort.

"False imprisonment is the unlawful restraint of an individual's personal liberty or freedom of locomotion." *Stowers v Wolodzko,* 386 Mich 119, 134; 191 NW2d 355 (1971) (quoting 35 CJS, False Imprisonment, § 1, p 621). "There can be no such

thing as an action for false imprisonment where the plaintiff has not been arrested; and while . . . manual seizure is not necessary, there must be that or its equivalent in some form of personal coercion." *Tumbarella v Kroger Co,* 85 Mich App 482, 489; 271 NW2d 284 (1978) (quoting *Hill v Taylor,* 50 Mich 549, 552; 15 NW 899 [1883]). On the other hand, there is no false arrest if the plaintiff voluntarily agrees to stay with the defendant. See *Bonkowski v Arlan's Dep't Store,* 383 Mich 90, 96-97; 174 NW2d 765 (1970) (the plaintiff returned to the store and agreed to an inspection of her purse upon a security guard's request); see also *Bruce v Meijers Supermarkets, Inc,* 34 Mich App 352, 354-357; 191 NW2d 132 (1971) (the plaintiff voluntarily submitted to a search but, additionally, there was probable cause for her detention).

In defining the sort of "personal coercion" that may amount to an impermissible arrest, the Restatement of Torts uses the following example:

A, the owner of a store, for the purpose of preventing B, a customer, from leaving the store, but without any privilege to do so, seizes and retains B's purse, which contains a large sum of money. B reasonably believes that [s]he can leave the store only at the risk of losing the purse and the money, and therefore remains in the store. A has confined B. [1 Restatement Torts, 2d, § 40A, p 61.]

Defendant argues that it had no intent to detain plaintiff, only her merchandise. Given that defendant was detaining property worth about $250, we believe that the question of defendant's intent involves the credibility of its employees and is not appropriate for summary disposition. *Tumbarella, supra* at 492. Defendant further argues that, under MCL 600.2917; MSA 27A.2917, it was privi-

leged to detain plaintiff. We note first that defendant has argued previously that it did not suspect plaintiff of any wrongdoing and had no intention to detain her. On the other hand, defendant has stated that it believed that plaintiff's bag contained merchandise for which she had not paid. Again, given these facts, we believe that whether defendant suspected plaintiff is a question of credibility not appropriate for summary disposition. Additionally, we note that, even if there was probable cause for her detention, plaintiff may still maintain an action, but her damages may be reduced. MCL 600.2917; MSA 27A.2917; see also *Tumbarella, supra* at 491; *Bruce, supra* at 357, n 1. The trial court erred in granting summary disposition of this count.

Plaintiff next argues that her claim of intentional infliction of emotional distress should be reinstated. We disagree.

Although the trial court correctly noted that our Supreme Court has not recognized this cause of action, panels of this Court have recognized it. See *Kamalnath v Mercy Memorial Hosp Corp,* 194 Mich App 543, 555; 487 NW2d 499 (1992); *Meek v Michigan Bell Telephone Co,* 193 Mich App 340, 346; 483 NW2d 407 (1992). However, we agree with defendant that, although unquestionably offensive, the conduct charged in this case is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kamalnath, supra* at 555; *Meek, supra* at 346. This case is distinguishable from *Ledsinger v Burmeister,* 114 Mich App 12, 16, 19-21; 318 NW2d 558 (1982), because this case does not involve any allegation of explicit racial slurs or unequivocally racially discriminatory conduct involved in that case.

Lastly, we address defendant's cross appeal from the trial court's refusal to grant summary disposition of the assault and battery claim.

Clearly, there is a factual dispute concerning whether defendant's employees snatched the bag out of plaintiff's hands or took it out of her shopping cart. A battery occurs when there is a wilful, harmful, or offensive touching of the plaintiff or of an object that is "attached to [the plaintiff] and practically identified with" the plaintiff's body. *Espinoza v Thomas,* 189 Mich App 110, 119; 472 NW2d 16 (1991) (contact with a car occupied by the plaintiff was sufficient). Thus, if the facts are as plaintiff argues, there would be a prima facie case of assault and battery established.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.