ADVOCACY ORGANIZATION FOR PATIENTS & PROVIDERS v
AUTO CLUB INSURANCE ASSOCIATION

Docket No. 231804. Submitted April 17, 2003, at Lansing. Decided July 3,
    2003, at 9:00 A.M. Leave to appeal sought. ·

   The Advocacy Organization for Patients & Providers, an organization
   of health-care providers and health-care patients, along with others,
   brought an action in the Eaton Circuit Court against the Auto Club
   Insurance Association, a no-fault insurance company, and others,
   seeking declaratory and injunctive relief on an allegation that the
   defendants were violating the no-fault act, MCL 500.3101 *et seq.*, by
   failing to pay the full amount of their insureds' medical bills
   required by MCL 500.3107 and 500.3157 of the act. The plaintiffs
   asserted that it was unlawful for the defendants to employ review
   companies to compare the insureds' providers' fees to those of
   other providers in order to determine a reasonable charge, when
   the defendants were required by statute to compare their insureds'
   health-care providers' fees for services with those providers' fees
   for comparable services provided to an uninsured patient to deter-
   mine a reasonable charge. The plaintiffs also alleged claims of tor-
   tious interference with contractual and business relationships, and
   conspiracy to commit such acts, on the basis of the defendants'
   actions in informing their insureds that the insureds were not
   responsible for any balances owed on unpaid charges, and that the
   defendants would indemnify the insureds against the plaintiff prov-
   iders' debt-collection attempts. The plaintiffs moved for partial
   summary disposition, and the defendants filed a cross-motion for
   summary disposition, arguing that a customary fee for a particular
   provider is not necessarily a reasonable one, and that the defen-
   dants were permitted to evaluate a medical invoice for reasonable-
   ness as a matter of law. The defendants also sought summary dis-
   position regarding the tortious interference and conspiracy claims.
   The trial court, Calvin E. Osterhaven, J., granted the defendants'
   motion for summary disposition regarding all claims. The plaintiffs
   appealed.

       The Court of Appeals *held*:

       1. The question to be answered is whether, under the no-fault
   act, the defendant insurance companies are required to pay the full

amount the plaintiff medical providers charge for medical costs as long as the charges constitute "customary" charges under § 3157, or if the defendants are entitled to independently review the medical costs charged to their insureds to determine whether a particular charge is "reasonable." Under the act, insurers are only liable for medical expenses that are both necessary and reasonable. MCL 500.3107. The plaintiffs' argument that § 3157 requires that the defendants pay the customary charges of health-care providers without regard to the reasonableness of the charges is unsupported by statute or case law. Section 3157 simply places a maximum on what health-care providers may charge; it does not state that a "customary" charge is necessarily a "reasonable" charge that must be paid in full. However, because the act does not define what is "reasonable," or set forth criteria for determining whether a charge is reasonable, insurers must determine in each particular instance whether a particular charge is reasonable in light of the service or product provided. Accordingly, the trial court properly granted summary disposition to the defendants because the "reasonableness" language in §§ 3107 and 3157 of the act does not refer to the amount that the health-care provider establishes as a "customary" charge for the service rendered.

2. The plaintiffs' claims of tortious interference with contractual and business relationships, and conspiracy to commit such acts, fail because the plaintiffs cannot establish that the defendants intentionally committed an act wrongful per se or an unjustified lawful act with the purpose of interfering with the plaintiffs' business and contractual relationships. The defendants lawfully reviewed the plaintiff providers' medical charges for reasonableness and agreed to defend and indemnify their insureds regarding claims for unpaid balances. The trial court properly granted summary disposition to the defendants regarding these claims.

3. The plaintiffs' claim that the trial court erred in denying the plaintiffs' motion for class certification was made moot by the resolution of the issues raised.

Affirmed.

FITZGERALD, P.J., concurring, stated that he agreed with the majority's analysis and holding, and wrote separately only to note his concern regarding the Legislature's failure to declare what is a "reasonable" charge under the act, and to invite the Legislature to do so through legislation.

*Lopatin, Miller, Freedman, Bluestone, Herskovic & Domol* (by *Barbara H. Goldman* and *Richard E. Shaw*), and *Linda Fausey* for the plaintiffs.

*Dykema Gossett PLLC* (by *Lori M. Silsbury*) for Citizens Insurance Company and Auto-Owners Insurance Company.

*Bodman, Longley & Dahling* (by *James A. Smith*) for State Farm Mutual Automobile Insurance Company.

*Zausmer, Kaufman, August & Caldwell, P.C.* (by *Mark J. Zausmer*), for Titan Insurance Company.

*Barris Sott Denn & Driker, P.C.* (by *Stephen E. Glazek*), for the Auto Club Insurance Association.

*Garan, Lucow, Miller, Seward & Becker, P.C.* (by *David N. Campos*), for Allstate Insurance Company, Wolverine Mutual Insurance Company, and Secura Insurance Mutual Company.

*Foster Swift Collins & Smith, P.C.* (by *Scott L. Mandel*), for Frankenmuth Mutual Insurance Company.

*Williams Mullen Clark & Dobbins* (by *Susan Tukel*) for Transamerica Insurance Group.

*Wheeler & Upham, P.C.* (by *Gary A. Maximiuk* and *Jack L. Hoffman*), for Framers Insurance Exchange.

*Feeney, Kellett, Wienner & Bush* (by *Cheryl A. Bush*) for Review Works.

*Still, Nemier, Tolari & Landry, P.C.* (by *David B. Landry*), for Recovery Limited, Inc.

*Willingham & Coté* (by *Raymond J. Foresman*) for Farm Bureau Insurance Company.

*Lambert, Leser, Cook, Schmidt & Giunta, P.C.* (by *Susan M. Cook*), for Medcheck Medical Audit Services.

*Jaffe, Rait, Heuer & Weiss, P.C.* (by *Joseph J. Shannon*), for Manageability, Inc.

Before: FITZGERALD, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM. Plaintiffs Advocacy Organization for Patients & Providers and others appeal as of right the trial court's order granting defendants Auto Club Insurance Association and others' motion for summary disposition and denying plaintiffs' cross-motion for partial summary disposition in this no-fault insurance case. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves a dispute over the interpretation of Michigan's no-fault act, MCL 500.3101 *et seq.*, and specifically MCL 500.3107 and 500.3157. Plaintiffs are forty-nine individual medical providers, two guardians of catastrophically injured victims of automobile accidents, and an organization made up of health-care providers and health-care patients, whose principal objective is to act as a spokesperson for and to protect the legal rights of both groups. Defendants are either no-fault insurance companies who have issued policies to Michigan motorists, or the review companies employed by one or more of defendant insurance companies to review medical bills arising out of automobile accidents.[1]

---

[1] Because Linkage Enterprises, Inc., is not a party to this appeal, the term "defendants" will refer only to defendants-appellees.

Plaintiffs brought this action for declaratory judgment and injunctive relief, alleging that defendants violated the provisions of MCL 500.3107(1)(a), which requires that insurers pay "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation." Plaintiffs claimed that, under MCL 500.3107, defendant insurance companies have unlawfully been failing to pay the full and "reasonable" amount of their insureds' medical bills after employing defendant review companies to compare the insureds' providers' fees to those of other providers in order to determine what is "reasonable." Plaintiffs asserted that, in determining whether the fee is reasonable, § 3157 requires defendants to compare their insureds' health-care provider's fees for services with that provider's fees for comparable services provided to an uninsured patient. Plaintiffs therefore concluded that defendants' failure to pay the reasonable costs for necessary medical treatment rendered to victims of automobile accidents constituted a breach of their obligations under the act.

Plaintiffs further alleged that defendants had unlawfully informed their insureds in writing that they (the insureds) were not responsible or liable to the medical providers for the balance of the charges and promised to defend and indemnify their insureds against the providers' debt-collection attempts against the insureds/patients. As a result, plaintiffs asserted causes of action for tortious interference with contractual and business relationships and conspiracy to commit such acts.[2]

---

[2] Plaintiffs also alleged, inter alia, a federal due-process claim, one count of common-law fraud, and eight counts of Racketeering Influence

Plaintiffs filed a motion for findings and declarations, or partial summary disposition pursuant to MCR 2.116(C)(9) with regard to their request for declaratory judgment, arguing that defendants failed to state a valid defense to plaintiffs' claim that defendants may not lawfully refuse to fully reimburse health-care providers for covered medical expenses as provided in § 3157 of the act. Plaintiffs further argued that under the language of the act, defendants may not refuse to fully reimburse plaintiff providers for covered medical expenses as long as the provider's charge is not greater than the amount that provider would charge for similar services to persons without insurance. Thus, plaintiffs argued that defendants may not unilaterally determine whether a charge is reasonable when a standard for making that decision has been provided by the Legislature under § 3157. Accordingly, plaintiffs sought declarations and findings or partial summary disposition on their request for a declaratory judgment consistent with their interpretation of § 3157.

Meanwhile, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), arguing that (1) a "customary" fee for a particular provider is not necessarily a "reasonable" one, and (2) defendants are permitted to evaluate a medical invoice for reasonableness as a matter of law. The

---

and Corrupt Organizations (RICO) Act, 18 USC 1962, violations in their complaint. The case was temporarily removed to federal district court on federal-question jurisdiction arising out of the RICO claims. The district court dismissed plaintiffs' RICO claims and federal due-process claim, and the United States Court of Appeals for the Sixth Circuit affirmed. *Advocacy Organization for Patients & Providers (AOPP) v Auto Club Ins Ass'n*, 176 F3d 315 (CA 6, 1999). As a result, the case was remanded to the state trial court on the remaining claims, which were based exclusively on Michigan law.

motion also sought summary disposition regarding plaintiffs' claims for tortious interference, civil conspiracy, and fraud on the ground that each of those counts either failed to state a claim on which relief could be granted or failed to demonstrate a genuine issue of material fact for trial. Defendants concluded that summary disposition was appropriate as a matter of law and requested that plaintiffs' complaint be dismissed in its entirety.

After a hearing on the parties' respective motions for summary disposition, the trial court issued a well reasoned, written opinion and order denying plaintiffs' motion for partial summary disposition and granting defendants' cross-motion for summary disposition. The trial court rejected plaintiffs' argument and held that, under the act, defendants were entitled to review any medical charges and pay only those charges determined to be reasonable. The court further found that the "reasonableness" language in § 3157 did not refer to the amount that the medical providers established as the "customary" charge for their services, as such a conclusion would allow unilateral decisions by health-care providers regarding what constitutes reasonable medical expenses and would directly conflict with the Legislature's purpose in enacting the no-fault system and § 3107 in particular.

The trial court also found that plaintiffs had failed to establish a claim for tortious interference, civil conspiracy, or fraud because plaintiffs failed to establish any wrongful, unethical, or fraudulent conduct on the part of defendants in refusing to fully reimburse plaintiff providers for medical claims. As a result, the trial court denied plaintiffs' motion, granted defendants' motion for summary disposition, and entered

an order dismissing all of plaintiffs' claims with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

This court reviews de novo a trial court's decision regarding a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Similarly, issues involving statutory interpretation are questions of law that this Court reviews de novo. *Christiansen v Gerrish Twp*, 239 Mich App 380, 384; 608 NW2d 83 (2000).

### III. ANALYSIS

#### A. "REASONABLE" MEDICAL EXPENSES UNDER THE NO-FAULT ACT

The dispositive issue raised on appeal is whether, under the language of the act, defendant insurance companies are required to pay the full amount charged as long as the charge constitutes a "customary" one, or if defendants are entitled to independently review and audit the medical costs charged to their insureds to determine whether a particular charge is "reasonable." The answer to this question lies within the language of the statute itself.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998) (citations omitted). The first step in determining the Legislature's intent is to examine the specific language of the statute itself. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). If the statutory language is clear and unambiguous, the court must

apply the statute as written, and judicial construction is neither necessary nor permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999); *Howard v Clinton Charter Twp*, 230 Mich App 692, 695; 584 NW2d 644 (1998). Nothing will be read into a clear statute that is not within the manifest intent of the Legislature as derived from the language of the statute itself. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). However, if reasonable minds could differ on the meaning of a statute, judicial construction is permitted. *Howard, supra.* "A court must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction in order to accomplish the statute's purpose. . . . Particular provisions should be read in the context of the entire statute to produce an harmonious whole." *ABC Supply Co v River Rouge*, 216 Mich App 396, 398; 549 NW2d 73 (1996) (citations omitted).

The act provides a system of mandatory no-fault automobile insurance, which requires Michigan drivers to purchase personal protection insurance. See MCL 500.3101 *et seq.* "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). MCL 500.3107 provides that personal protection insurance benefits are payable by a no-fault insurer for "[a]llowable expenses consisting of all *reasonable* charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). MCL 500.3157,

in turn, details what the health-care provider can charge:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a *reasonable* amount for the products, services and accommodations rendered. The charge shall not *exceed* the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance. [Emphasis added.]

Thus, both the amount chargeable to the patient (§ 3157) and the amount that an insurer must pay to the health-care provider (§ 3107) is limited, by statute, to a reasonable amount.

Under this statutory scheme, an insurer is not liable for any medical expense that is not both reasonable and necessary. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 93-94; 535 NW2d 529 (1995), quoting *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49-50; 457 NW2d 637 (1990). The reasonableness of the charge is an explicit and necessary element of a claimant's recovery against an insurer, and, accordingly, the burden of proof on this issue lies with the plaintiff. *Id.* "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser, supra* at 50.

As the United States Court of Appeals for the Sixth Circuit recognized, these statutory provisions leave open the questions of (1) what constitutes a reason-

able charge, (2) who decides what is a reasonable charge, and (3) what criteria may be used to determine what is reasonable. See *Advocacy Organization for Patients & Providers (AOPP) v Auto Club Ins Ass'n*, 176 F3d 315, 320 (CA 6, 1999). In fact, as noted in more detail below, the general language of the statute leaves several questions unanswered. Plaintiffs argue that the criteria for determining whether a charge is reasonable under MCL 500.3107 is set forth in MCL 500.3157. According to plaintiffs, § 3157 provides that a charge is reasonable if it does not exceed the amount that provider "customarily charges for like products, services and accommodations in cases not involving insurance." Thus, plaintiffs claim that, under the act, defendants must pay all reasonably necessary medical expenses incurred for accidental bodily injuries as long as the charges do not exceed the amount that provider customarily charges for providing comparable services to patients without insurance.

Plaintiffs' position that no-fault insurance carriers must pay the customary charges of health-care providers without regard to the reasonableness of the charges finds no support in the statute or case law. Rather than defining what is a "reasonable" charge, the clear and unambiguous language of the second sentence in MCL 500.3157 simply places a maximum on what health-care providers may charge in no-fault cases. See *Hofmann, supra* at 114. The first sentence of § 3157 provides that a health-care provider may only charge a reasonable fee, while the second sentence "unambiguously provides that a health-care provider's charge for products, services, or accommodations in cases covered by no-fault insurance '*shall not*

*exceed* the amount . . . customarily charge[d] . . . in cases not involving insurance . . . .' " *Id.* at 103 (emphasis changed). Thus, although § 3157 limits what can be charged, nowhere in that section does the Legislature indicate that a "customary" charge is *necessarily* a "reasonable" charge that *must* be reimbursed in full by the insurer.

Plaintiffs' position defeats the "reasonableness" standard set forth in MCL 500.3107. As noted, § 3107 is a liability provision providing that no-fault insurers are only liable for medical expenses that are (1) reasonable, (2) reasonably necessary, and (3) incurred. *Nasser, supra* at 49-51. Indeed, "[a]ccording to the plain and unambiguous language of § 3107, an insurer is liable only for those medical expenses that constitute a reasonable charge for a particular product or service." *McGill v Automobile Ass'n of Michigan,* 207 Mich App 402, 405; 526 NW2d 12 (1994). "When read in harmony, §§ 3107 and 3157 clearly indicate that an insurance carrier need pay no more than a reasonable charge and that a health care provider can charge no more than that." *Id.* at 406.

Thus, the "customary charge" limitation in § 3157 and the "reasonableness" language in § 3107 constitute separate and distinct limitations on the amount health-care providers may charge and what insurers must pay with respect to victims of automobile accidents who are covered by no-fault insurance. *AOPP, supra* at 320; *Munson Medical Ctr v Auto Club Ins Ass'n,* 218 Mich App 375, 385; 554 NW2d 49 (1996) (Indicating that a plaintiff "bears the burden of proving *both* the reasonableness *and* the customariness of its charges . . . ." [emphasis added]); *Hofmann, supra* at 114 ("*In addition* to the 'customary charge' limita-

tion . . . , §§ 3107 and 3157 also impose a statutory qualification of reasonableness, such that a no-fault carrier is liable only for those medical expenses that constitute a reasonable charge for the product or service." [emphasis added]). Contrary to plaintiffs' argument, we hold that the "customary" fee a particular provider charges under § 3157 does not define what constitutes a "reasonable charge" under § 3107. See *AOPP*, *supra* at 320 ("the 'customary fee' charged by a particular provider does not define what a 'reasonable fee' is"). Rather, the "customary fee" is simply the cap on what health-care providers can charge, and is not, automatically, a "reasonable" charge requiring full reimbursement under § 3107.[3]

Plaintiffs' argument would, in essence, allow health-care providers to unilaterally determine the "reasonable" charge to be paid by the insurer by establishing their own customary charges. This result is not only contrary to the plain language of the statute, but is also in defiance of the legislative scheme and policy considerations underlying the act. "The basic goal of the no-fault insurance system is to provide individuals injured in motor vehicle accidents assured, adequate and prompt reparation for certain economic losses at the lowest cost to the individual and the system." *Gooden v Transamerica Ins Corp of America*, 166 Mich App 793, 800; 420 NW2d 877 (1988); see also *Davey v DAIIE*, 414 Mich 1, 10; 322 NW2d 541 (1982). In fact, this Court in *McGill*, *supra*, discussed at length the policy considerations underlying the act in rejecting the plaintiffs' argument that

---

[3] However, a charge that is more than that charged to an uninsured person would, by necessity, be unreasonable because of the limitation in § 3157.

the defendant insurers were required to pay the full amount of medical expenses billed by health-care providers:

> It is to be recalled that the public policy of this state is that "the existence of no-fault insurance shall not increase the cost of health care." Indeed, "[t]he no-fault act was as concerned with the rising cost of health care as it was with providing an efficient system of automobile insurance." To that end, the plain and ordinary language of § 3107 requiring no-fault insurance carriers to pay no more than reasonable medical expenses, clearly evinces the Legislature's intent to "place a check on health care providers who have 'no incentive to keep the doctor bill at a minimum.' "
>
> For the above reasons, we reject plaintiffs' argument that, pursuant to the no-fault act, defendants are obligated to pay the entire amount of plaintiffs' medical bills. *Such an interpretation would require insurance companies to accept health care providers' unilateral decisions regarding what constitutes reasonable medical expenses, effectively eliminating insurance companies' cost-policing function as contemplated by the no-fault act. This result would directly conflict with the Legislature's purpose in enacting the no-fault system in general and § 3107 in particular. "[I]t is clear that the Legislature did not intend for no-fault insurers to pay all claims submitted without reviewing the claims for lack of coverage, excessiveness, or fraud." [Id.* at 407-408 (citations omitted; emphasis added).]

Further, "not only should an insurer audit and challenge the reasonableness of bills submitted by health care providers, but the providers should expect no less." *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 582 n 3; 543 NW2d 42 (1995). "Indeed, . . . if the insurance company *paid* the bills regardless of their reasonability, that action would, in fact, be in violation of the insurance contract." *Id.* at 581-582 (emphasis added). Hence, plaintiffs' argument that,

under the statute, the customary fee established by health-care providers is automatically the reasonable charge that insurers must pay in full, is contrary to the statutory language, well-established case law, and the purposes of the act.

Instead, we hold that the statute requires that an insurer only pay on behalf of the insured a "reasonable" charge for the particular product or service. However, the Legislature has not defined what is "reasonable" in this context, and, consequently, insurers must determine in each instance whether a charge is reasonable in light of the service or product provided. It may be that a health-care provider's "customary" charge is also reasonable given the services provided, while at other times the "customary" charge may be too high, and thus unreasonable. Either way, the trier of fact will ultimately determine whether a charge is reasonable. *Nasser, supra* at 55.[4]

We will not attempt to delineate the permissible factors for determining what is "reasonable," because it is not necessary to do so in resolving plaintiffs' arguments. Defendants in this case have not refused

---

[4] Plaintiffs argue that the practical effect of allowing defendants to determine and pay what is reasonable will essentially foreclose further adjudication of defendants' determination because of the costs associated with bringing a legal action for what may be relatively small sums in each individual case, thus leaving defendants' decisions as the final one. We believe both sides overstate the effects of either side prevailing. Under the statute, plaintiffs necessarily make the initial determination of reasonableness by charging the insured for the services. Once plaintiffs charge the insured, the insurer then makes its own determination regarding what is reasonable and pays that amount to plaintiffs. *LaMothe, supra* at 581-582. Although, as plaintiffs argue, the cost-benefit analysis may cause fewer legal actions over the disputed amount, the fact-finder will ultimately decide what is reasonable. Whether this procedure is the best is a matter for the Legislature. *Hanson v Mecosta Co Rd Comm'rs,* 465 Mich 492, 504; 638 NW2d 396 (2002).

to pay health-care benefits due plaintiffs. To the contrary, defendants paid what they believed to be the reasonable charges incurred for reasonably necessary products, services, and accommodations for their insureds' care. Under the foregoing case law, defendants are allowed to pay the reasonable amount and contest the claim under the act without penalty where a reasonable dispute exists regarding the amount of benefits owing. *LaMothe, supra* at 581-582; *Lewis v Aetna Cas & Surety Co*, 109 Mich App 136, 139; 311 NW2d 317 (1981). The fact that the amount paid is less than the amount the health-care provider charged does not violate the act where the amount paid is based on a proper determination of what is reasonable and the insurer will defend and indemnify the insured if the health-care provider sues the insured for the balance. *LaMothe, supra.*

Plaintiffs may challenge defendants' failure to fully reimburse them for medical bills as a violation of the act, but they have the burden of establishing the reasonableness of the charges in order to impose liability on the insurer. "[T]he question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury . . . ." *Nasser, supra* at 55. If plaintiffs disagree with a defendant's assessment of reasonableness, they have the right to contest the amount of such payment and must prove by a preponderance of the evidence that the expenses were both reasonable and necessary. See *Kallabat v State Farm Mut Automobile Ins Co*, 256 Mich App 146, 152; 662 NW2d 97 (2003) (direct and circumstantial evidence may be considered by the jury to determine whether an expense was both reasonable and necessary). Accordingly, the trial court properly granted summary

disposition to defendants with respect to plaintiffs' motion for declaratory relief because the "reasonableness" language in §§ 3107 and 3157 of the act does not refer to the amount that the health-care provider establishes as a "customary" charge for the service rendered.[5]

We further note that because the legislative intent is clear from the unambiguous language of the statute, the legislative history provided and relied on by plaintiffs as a basis for finding a violation of the act is irrelevant and immaterial, and we need not attempt to interpret the statute on the basis of its legislative history. *In re Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003). Consequently, the criterion defendants used in determining whether a particular charge is reasonable is not precluded under the plain language of the statute or Michigan case law. Defendants have not employed the worker's compensation payment schedule, which was rejected in *Munson, supra*, to determine whether a particular charge is reasonable. Nor have defendants utilized the amounts insurers have paid for a service, which basis was rejected for purposes of determining a "customary" charge in *Munson* and *Hofmann*. Rather, defendants Auto Club Insurance Association (ACIA) and Review Works, for example, employ the "80th percentile test." Under this test, ACIA and Review Works recommend

---

[5] Plaintiffs' argument regarding the unconstitutional delegation of legislative power was not pleaded in the complaint, addressed by the trial court, or raised in the statement of questions presented, and is therefore not properly preserved for this Court's review. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *Pro-Staffers, Inc v Premier Mfg Support Services, Inc*, 252 Mich App 318, 328-329; 651 NW2d 811 (2002); *Fast Air, Inc v Knight*, 235 Mich App 541; 550; 599 NW2d 489 (1999); *Phinney v Perlmutter*, 222 Mich App 513, 564; 564 NW2d 532 (1997). See also MCR 2.111(B)(1).

payment of one hundred percent of the charges as long as the charge does not exceed the highest charge for the same procedure *charged* by eighty percent of other providers rendering the same service. Thus, although defendants ACIA and Review Works use a formula, that formula is based on a survey of *charges* by other health-care providers for the same services, a sampling which we conclude is not prohibited by the statute for determining the reasonableness of charges for the same service.

Further, *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46; 555 NW2d 871 (1996), is of no consequence to plaintiffs' argument. The *Mercy Mt Clemens* Court held that the amounts health-care providers accepted as payment in full from various third-party payers, such as Medicare, Medicaid, Blue Cross, worker's compensation carriers, HMOs, and PPOs, were irrelevant in determining whether the amounts health-care providers *charged* were reasonable and customary under § 3157. *Id.* at 48-50. Indeed, the panels in *Mercy Mt Clemens, Munson,* and *Hofmann* each concluded that the data regarding payments made by third-party payers could not be used to determine the customary *charge* under § 3157. *Mercy Mt Clemens, supra* at 53-55. In contrast, this case involves defendants' review of plaintiffs' medical charges for reasonableness under § 3107 by comparing plaintiffs' charges to those of other providers for similar services.

### B. TORTIOUS INTERFERENCE

Plaintiffs next argue that the trial court erred in granting defendants' motion for summary disposition of their claims of tortious interference with contrac-

tual and business relationships. We disagree. In order
to establish tortious interference with a contract or
business relationship, plaintiffs must establish that
the interference was improper. *Patillo v Equitable
Life Assurance Society of the United States*, 199 Mich
App 450, 457; 502 NW2d 696 (1992). In other words,
the intentional act that defendants committed must
lack justification and purposely interfere with plain-
tiffs' contractual rights or plaintiffs' business relation-
ship or expectancy. *Winiemko v Valenti*, 203 Mich
App 411, 418 n 3; 513 NW2d 181 (1994) (citations
omitted); *Feldman v Green*, 138 Mich App 360, 369;
360 NW2d 881 (1984). The "improper" interference
can be shown either by proving (1) the intentional
doing of an act wrongful per se, or (2) the intentional
doing of a lawful act with malice and unjustified in
law for the purpose of invading plaintiffs' contractual
rights or business relationship. *Id.*

In this case, plaintiffs failed to establish that defen-
dants intentionally committed an act wrongful per se
or an unjustified lawful act with the purpose of inter-
fering with plaintiffs' business and contractual rela-
tionships. As previously discussed, defendants law-
fully reviewed plaintiff providers' medical charges for
reasonableness and agreed to defend and indemnify
their insureds for any responsibility in the payment of
the remaining balance. Further, the trial court cor-
rectly pointed out that plaintiffs failed to show that
defendants were motivated by anything other than
their right under § 3107 to limit their liability to
charges that are reasonable and reasonably necessary.
Moreover, defendants did not commit an act wrongful
per se or an unjustified lawful act by advising their
insureds that the health-care provider would not be

fully reimbursed and that the insurer would indemnify and defend the insureds if the health-care provider sought additional monies from them. Unlike the case plaintiffs rely on,[6] no evidence exists that defendants suggested to any of the insureds that they switch health-care providers. For all those reasons, the trial court properly granted defendants' motion for summary disposition.

### C. CONSPIRACY

For the same reasons, plaintiffs failed to establish a claim of conspiracy. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). In count six of the complaint, plaintiffs' alleged that defendants conspired to tortiously interfere with plaintiffs' business and contractual relationships. However, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Center, PC v New York Life Ins Co*, 157 Mich App 618, 632; 403 NW2d 830 (1986). As previously discussed, plaintiffs simply failed to establish the underlying tort because they failed to establish any unlawful purpose or unlawful means in defendants' actions. Because plaintiffs failed to establish any actionable underlying tort, the conspiracy claim must also fail. Thus, plaintiffs failed to state a prima facie case of tortious interference or

---

[6] *Dolenga v Aetna Cas & Surety Co*, 185 Mich App 620; 463 NW2d 179 (1990).

conspiracy. Accordingly, such claims fail as a matter of law, and the trial court's grant of summary disposition to defendants was appropriate.

### D. CLASS CERTIFICATION

Finally, plaintiffs argue that the trial court erred in denying plaintiffs' motion for class certification. The resolution of the issues raised renders this issue moot. *McGill, supra* at 408; *Tucich v Dearborn Indoor Racquet Club,* 107 Mich App 398, 407; 309 NW2d 615 (1981) (Plaintiffs that cannot maintain their individual causes of action are unqualified to sue in a class action or represent the purported class.).

Affirmed.

Fitzgerald, P.J., *(concurring).* In reaching its conclusion, the majority strictly applied the plain and unambiguous language of MCL 500.3107, as they are required to do. Therefore, I agree with the analysis employed by the majority. I write separately, however, because I am bothered by the fact that the Legislature has not declared what is a "reasonable" charge for a particular product or service and has not provided statutory criteria to determine whether a charge is reasonable under § 3107.

As noted by the majority, § 3107 is subjective and requires insurers to make a determination in each instance whether a charge is reasonable. When an insurer does not pay the amount of the charge in full, doctors and physicians often sue their patients for the balance unpaid by the insurer. The unfortunate results of the failure to provide criteria for determining the reasonableness of a charge are destruction of the doctor-patient relationship when the doctor sues

the patient, as well as increased litigation where a trier of fact is required to determine the reasonableness of the charge. To address these problems, I would strongly recommend that legislation be enacted that requires the Commissioner of Insurance to adopt medical-fee schedules, similar to the reimbursement schedules for health-care providers that are common in connection with health-insurance policies, with respect to reimbursement of health-care providers under policies of automobile insurance. Under this scheme, no health-care provider could demand or request any payment from any person in excess of those fees permitted by the medical-fee schedules established pursuant to the act, nor would any person be liable to any health-care provider for any amount of money that resulted from the charging of fees in excess of those permitted by the medical-fee schedules.